# Janney & Cheney, Trustees, v. Merchants & Pl. Nat. Bank of Montgomery.

98   615 .
98   607,

*Bill in Equity for Injunction of sale under Execution and to Compel the Redemption of Pledged Stock.*

1. *Estoppel of assignees.*—The assignee stands in the shoes of the assignor; and, any contract made by the assignor in pledging the capital stock of an incorporated company, which would estop the assignor, will operate an estoppel of the assignee.

2. *The rights of parties to pledge stock.*—Where a stockholder, who is also a creditor of a corporation, has pledged its stock to secure an individual debt, without fraud, misrepresentation or concealment, or without express promise as to his future action, the rights of the parties are those only which arise from the contract of pledging the stock.

3. *Nature of capital stock.*—Capital stock is a security for the creditors of a corporation. It entitles the holder to participate in the management of the corporate business, to share in its profits, and in its surplus, after the payment of the corporate debts.

4. *Claim of creditors; creditors who are stockholders.*—Creditors of

corporations have precedence of the claims of its stockholders, and may first satisfy their claims, even to the exhaustion of its capital stock and all its assets, before any stockholder can assert any right to share in the profits, or in the distribution of the property of the corporation; in the application of this principle there is no discrimination against creditors who are also stockholders.

5. *The relation of stockholder to corporation.*—There is no relation of debtor and creditor existing between the holder of stock and the corporation; and the pledgee of stock does not thereby acquire a debt against the corporation, but simply a property interest which entitles him to share in the management, profits, and the surplus, after its debts are paid.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed on the 3rd of November, 1892, by the Merchants and Planters National Bank of Montgomery, against Janney and Cheney, as trustees of Moses Bros. It prayed that defendants be required to redeem forty shares of the capital stock of the Montgomery Real Estate Association, which Moses Bros., the assignors of defendants, had pledged to complainant before their assignment to defendants, as security for a loan made to Moses Bros. by complainants; and further sought to enjoin said trustees from proceeding to sell under execution the property of the Montgomery Real Estate Association for the payment of a judgment in favor of defendants, as assignees of a claim held against said association, by Moses Bros. The bill avers that, prior to the assignment of Moses Bros., in July 1891, they became indebted to The Merchants and Planters National Bank of Montgomery, and to secure said indebtedness, had pledged, among other securities, forty shares of the capital stock of the Montgomery Real Estate Association; that the whole of the capital stock of said association was paid up in full by the subscribers, and that the association had bought the lot in the city of Montgomery on Commerce Street and Court Square, and erected thereon the building known as "The Moses Building;" that the said lot was bought, and the said building was erected thereon, principally, by said subscriptions of stock, and the issue and sale of $80,000, of 6 per ct. mortgage bonds, secured by deed of trust, executed by said association, upon said lot and building, and, which deed of trust is still in force and unsatisfied; that the said lot and building are the only property owned by said association; that at the time of said pledge Moses Bros. had become the creditors of said association and had afterwards made large advances thereto; that these assignees had brought suit in the Circuit

Court of Montgomery county, and recovered judgment on the indebtedness, against said association; that complainant had diligently sought to realize on the securities deposited by Moses Bros., but that a considerable amount of the claim of complainant remained unpaid after exhausting said securities. The bill then proceeds to state, that said trustees were about to sell said Moses Building, without redeeming the pledge of stock made by Moses Bros. or satisfying the balance of complainant's demand, which action was alleged to be against equity and good conscience. Then follows the prayer as above stated.

To the bill Janney & Cheney demurred, assigning as grounds of demurrer: *First*, That it appeared from the bill that it was known to the complainant, at the time said stock was pledged, that said association was indebted to Moses Bros. *Second*, That it appeared from the bill that Moses Bros. only pledged to the complainant the interest of said Moses Bros. as stockholders in said association, and not their interest as creditors therein. *Third*, That it appeared from the bill that the only interest acquired by complainant, by the pledge of said stock, was the interest of stockholders in the surplus of the assets of said corporation after the payment of its debts and liabilities. *Fourth*, That it appeared from the bill, that the execution sought to be enjoined was upon a judgment for an indebtedness, a large part of which was for advances made by Moses Bros. to said association, after the pledge of said stock. *Fifth*, That said bill did not allege that Moses Bros. made any representations, or did any act, upon which the complainant acted to its injury in accepting said pledge. *Sixth*, It does not appear from said bill that complainant was induced to accept said stock by any representation of Moses Bros. that they would not enforce the collection of the indebtedness due to them, or which they might afterwards have against said association. *Seventh*, Said bill fails to show any agreement by Moses Bros. that they would redeem the stock pledged by them before they would enforce their claim against said association. *Eighth*, It appears from the allegations of said bill that if the Moses Bros. made any representation which constituted an estoppel, such representations related only to future conduct or inaction with reference to their demand against said association. A motion to dismiss for want of equity was also made by defendant. The demurrer was overruled by the chancellor, and the motion to dismiss for want of equity denied. This appeal

is taken, and said action of the Chancery Court is assigned as error.

H. C. TOMPKINS, and HORACE STRINGFELLOW, for appellants.

BRICKELL, SEMPLE & GUNTER, for appellee.

NOTE.—No briefs came into the hands of the reporter.

COLEMAN, J.—Moses Bros. owned forty shares of the capital stock of the Montgomery Real Estate Association, a corporation, which they pledged as security for a loan of money obtained by them from the Merchants & Planters National Bank. At the time of the loan and pledge of the stock Moses Brothers were creditors of the Montgomery Real Estate Association, and after obtaining the loan and making the pledge, the association became indebted to them for an additional amount. Moses Bros. became financially embarrassed, and made a general assignment of all their effects to Janney & Cheney for the benefit of all their creditors. The assignees sued in a court of law upon the debts due Moses Bros. and which passed to them by virtue of the assignment, and obtained judgment against the Montgomery Real Estate Association. Execution upon this judgment was levied upon the property of the Montgomery Real Estate Association, and the trustees were proceeding to enforce the collection of their judgment by a sale of the property, when The Merchants & Planters National Bank, appellees, filed the present bill in chancery, the purpose of which was to enjoin the execution sale of the property and require the trustees to redeem the stock pledged by Moses Bros. before enforcing their judgment, against the Montgomery Real Estate Association, by a sale of its property. The bill also prays for a decree for the sale of the stock pledged, and the application of the proceeds to the satisfaction of complainant's debt.

It is averred in the bill, that the property levied upon by execution is the entire property of the Building Association and that its value, is not more than sufficient to pay the judgments and other indebtedness of the Association, so that its sale under execution will render valueless the stock pledged as a security for complainant's debt. Complainants might properly call upon the respondents to redeem the pledge, and in the event of their failure to do so, pray for a sale of the legal pledge and the application of the proceeds to their debt, and no doubt it would be the duty of the as-

[Janney & Cheney, Trustees, v. Merchants & Pl. Nat. Bank.]

signees to redeem the stock pledged in the interest of other creditors of Moses Bros. if it appeared from the bill, that the value of the stock, exceeded the debt for which it was pledged. But that is not the present case. The question presented by the bill is, whether one who is a creditor of, and a stockholder in a corporation, by pledging his stock to secure an individual liability to a third party, thereby estops, himself from collecting his debt against the corporation until he redeems the pledge. The assignees of Moses Bros. by the assignment acquired no greater rights than Moses Bros. held, and if the contract of pledge operates an estoppel as to them their assignees will be estopped.—*Grangers' Life Ins. Co. v. Kamper*, 73 Ala. 346; *Walker v. Miller*, 11 Ala. 1067.

The bill does not pretend that Moses Bros. were guilty of any fraud in the transaction, or made any misrepresentations, or were guilty of concealment, or held out any improper inducements, as to the stock, or made any express promises, as to their future action, or false affirmation as to existing facts. The rights of the parties then are those, and none other, which arise from the contract of pledging the stock. What did Moses Bros. pledge? What is stock, and what rights and privileges compose its constituents? Many writers have undertaken to define stock. We need not repeat them. All agree that capital stock is a security for the creditors of a corporation. That stock entitles its holder, to share in the management of the corporate business, to share in its profits during its existence, and in the surplus assets, after paying all its indebtedness. The claims of creditors have priority of stockholders. They must be first satisfied even to the exhaustion of the capital stock and all the assets of the corporation, to the utter destruction of the value of the stock if necessary, before the holder of stock can lay any claim to share in the profits or in the distribution of the property of the corporation. In the application of this principle, there is no discrimination against creditors who are also stockholders. Moses Bros. as creditors of the Montgomery Real Estate Association, were entitled to have the assets of the corporation applied to the payment of their debt although it rendered valueless every stockholder's interest in the corporate property, including their own stock. Certainly the pledgee of the stock acquired no greater right, than the pledgor held and owned as a stockholder. Their rights as creditors remained unimpaired, and these rights passed to their assignees. It is no impairment of the value of the stock to apply the assets of the corporation to the payment of its just debts, in preference to applying it for the benefit of a stockholder, or his assignee.

Stock is subordinate to the claims of all the creditors of the corporation, and has no intrinsic value superior to their claims. This is the extent of property rights inherent in stock. The pledgee knew when he received the stock all the debts of the corpora'ion must first be paid, and if the assets were insufficient for this primary purpose, the stock would be valueless. This is what the pledgee contracted for, when he agreed to accept, and did receive the stock as a pledge, and nothing more. Unless therefore Moses Bros. were guilty of fraud, misrepresentation, unlawful concealment, or by some promise or false affirmation as to existing conditions have estopped themselves from asserting the rights of creditors, or unless the contract of pledge of itself operates as an estoppel upon them as creditors, complainant's bill in this respect is without equity. There is no averment in the bill of any express act, or declaration or omission, which would operate an estoppel. Does the contract of pledge by implication create an estoppel, upon their rights as creditors to enforce the payment of their debt? Clearly not. Stock does not create the relation of debtor and creditor between the holder of the stock and the corporation. By the pledge, complainant did not acquire a debt against the Real Estate Association. It was simply stock, property interest, which entitled the owner, to share in the management of the corporate affairs, to share proportionately in the dividends, and when dissolved, in the surplus assets after payment of all debts. It is argued that the pledgor as in case of a mortgagor can do no act to impair this property interest after pledging it. We think the proposition sound, but the act complained of, that of a creditor enforcing his claim against the corporation is not within the operation of the principle invoked. To apply the benefit of this principle to stock would invest it with a value, it never possessed, that of sharing in the distribution of the assets, in preference to that of a creditor. The mere contract of pledge, without more, carries with it no such agreement. If there was a defect in title at the time of the pledge, doubtless a better title afterwards acquired by the pledgor, would enure to the pledgee; or the pledgor of the stock might be estopped by the principle invoked, from interfering with the management of the corporate business to the detriment of the stock pledged, or from sharing in the dividends if any were declared, or if in any way he should undertake to prevent the holder from sharing in the surplus on dissolution after payment of all claims. Such conduct affects directly the value of the security pledged, and the doctrine of estoppel would intervene for the pro-

tection of the pledgee. Where all these interests are preserved and fully protected, it can not be said the value of stock as such is diminished. Suppose the pledgee, in the exercise of his undoubted right, should sell the stock, and a third person become the purchaser. The purchaser would succeed to all the rights of both pledgor and pledgee. Moses Bros. would no longer be stockholders but would continue as creditors of the corporation. If the proceeds of the sale of the stock should prove insufficient to satisfy the debt due the pledgee, must the pledgor pay the balance due, before he can collect his debt, from the corporation? Or could the purchaser of the stock require the pledgor to redeem it from him before he would be permitted to proceed to enforce his judgment? This would seem to be the legitimate conclusion from the argument of the complainant. We find nothing in the contract of the pledge of the stock by Moses Bros. which implied the further pledge by Moses Bros. of their claim against the corporation, then existing or afterwards acquired, or which subordinated their rights as creditors, to the rights of the pledgee. We do not think such an agreement was contemplated by the parties. The demurrer to the bill was well taken, and the court erred in its decree overruling the demurrer.

If the complainant desires the assistance of a court of equity to decree a sale of the stock, the bill might be retained for this purpose.

Reversed and remanded.

