## In re MARCELLA COTTON MILLS.

(District Court, M. D. Alabama, N. D., at Montgomery. September 23, 1925.)

No. 5186.

**1. Corporations ⬤�longdash⟩1—Equity will not allow corporate fiction to destroy creditors' rights, and trustees of dissolved corporation, who are sole beneficiaries, stand in no better position than going concern.**

Equity will not allow a corporate fiction to destroy rights of creditors, where element of fraud in fact or in law exists, nor can trustees of dissolved corporation stand in better position than going concern, where beneficiaries of such dissolved corporation are sole parties to fiction.

**2. Corporations ⬤⟩378—Where one corporation wholly under control of another, fact of separate entity will not relieve latter from liability.**

Where one corporation is wholly under control of another, fact of separate entity does not relieve latter from liability for former's acts, nor can it resort to the fiction to defeat bona fide creditors.

**3. Bankruptcy ⬤⟩345—Sole stockholders and creditors of dissolved corporation held not entitled to resort to corporate fiction in assertion of claim against new corporation.**

Where corporation sold all of its assets to new corporation, to be paid for in part by stock of latter, *held*, trustees of dissolved corporation, who were its sole stockholders and creditors, and who for more than a year participated as stockholders in conduct of new corporation, could not thereafter, on bankruptcy of it, assert claim as trustees of dissolved corporation for their own benefit, superior to rights of other creditors of new corporation.

**4. Corporations ⬤⟩566(5)—Law favors creditors as against stockholders of insolvent corporation.**

As between creditors and stockholders of insolvent corporation, law favors creditors, especially when stockholders' conduct has contributed to insolvency; and, though stock subscription is rescinded for fraud, subscriber's claim is subordinate to claims of general creditors.

**5. Corporations ⬤⟩587—Sole stockholders, on sale of corporate assets to be paid for in part by stock of new corporation, held to become stockholders therein, though certificates not issued.**

Sole stockholders of corporation, by carrying out agreement for sale of its assets to new corporation, to be paid for in part by stock of latter, *held* to become stockholders of new corporation, though stock certificates were not in fact issued.

**6. Corporations ⬤⟩566(5)—Preferred stockholders not creditors of same class as nonstockholders.**

Preferred stockholders of corporation are not creditors of same class as nonstockholders.

**7. Bankruptcy ⬤⟩308—Sole stockholders of corporation, assets of which were sold in part for stock of new corporation, held not in position to rescind for refusal to deliver stock certificates.**

Where two persons, owning all stock of corporation, after sale of its assets, to be paid for in part by stock of new corporation, for more than year conducted themselves as stockholders of latter, though stock certificates had not been issued, due to controversy concerning claim, they could not thereafter, on bankruptcy of new corporation, rescind and declare breach of contract for wrongful refusal to deliver certificates, particularly in view of injunction, which one of them had obtained against such delivery, and in view of Code Ala. 1923, § 7000.

**8. Corporations ⬤⟩98—Election of remedies ⬤⟩9—Purchaser of stock, on refusal to deliver certificates, has two remedies, between which he must elect.**

On wrongful refusal to deliver stock certificate, purchaser thereof has two remedies he may pursue, legal remedy to compel delivery, or he may declare breach and assert claim for damages, but must make an election between such remedies, which election is final.

**9. Corporations ⬤⟩98 — Stock subscriber's right to recover payment on refusal to deliver certificate dependent on notice of election of remedy and demand.**

Right of stock subscriber to recover money paid on refusal to deliver certificate is dependent on his giving of notice of his election to pursue such remedy and making demand.

**10. Corporations ⬤⟩566(5)—Preferred stockholders are entitled to have their stock discharged in full ahead of any disbursements to common stockholders.**

Preferred stockholders are entitled to have their stock discharged in full ahead of any disbursements to common stockholders.

In Bankruptcy. In the matter of the Marcella Cotton Mills, bankrupt. On report of referee in the matter of the claim of Thomas Raby, Jr., and another, as trustees of the Marcella Cotton Manufacturing Company. Report confirmed.

Chauncey Sparks, of Eufaula, Ala., and Rushton, Crenshaw & Rushton, of Montgomery, Ala., for claimants.

L. J. Clayton, of Eufaula, Ala., for trustee.

McDowell & McDowell, of Eufaula, Ala., and Alston, Alston, Foster & Moise, of Atlanta, Ga., for bankrupt.

CLAYTON, District Judge. This is a contest of the claim of Thomas Raby, Jr., and Max Miller, as trustees of the original Marcella Cotton Manufacturing Company, a corporation, with its principal place of business at Eufaula, Ala. There were 1,000 shares of capital stock, of the par value of

$100 each; Thomas Raby, Jr., owning 999 shares, and Max Miller one share of this stock. During a suspension of the operation of the mill in 1923, they made efforts to sell the whole property of the corporation. William G. Broadfoot came into possession of one of their circular letters, signed "Thomas Raby, Inc.," in which it was stated that a purchaser of the property was desired. Broadfoot answered this circular, went to Eufaula, made a survey of the property, and tendered an offer to Raby on December 11, 1923, to buy the property. On the 19th of that month Broadfoot's proposition of purchase was accepted.

The agreed price of the assets, including the stock of the Marcella Cotton Manufacturing Company, was $60,000 par value of stock, with certain preferences set out in the contract, in a new corporation to be organized by Broadfoot, and as a part of the contract the new corporation was to pay $50,000 in cash. Broadfoot organized the new corporation on December 23, 1923, under the name of Marcella Cotton Mills, which is the bankrupt here.

Inasmuch as the two corporations have similar names, for convenience one is hereinafter referred to as the old corporation, and the other as the new corporation. The articles of incorporation provided for the above-mentioned $60,000 par value of stock, and the property of the old corporation was conveyed to the new corporation by Miller and Raby, using the name of the old corporation in the deed of transfer, for the title of the property was in that corporation. The deed recited full payment of purchase price. Because the stock was in their names, Raby and Miller transferred in blank all of the stock of the old corporation to the new corporation and delivered the same to Broadfoot. Thereupon Raby and Miller filed articles of dissolution of the old corporation in the probate court of Barbour county, Ala., and they as directors became trustees, as provided by the law of Alabama in case of the dissolution of a corporation. This completed the contract upon the part of Raby and Miller. In order to carry out the contract upon the part of Broadfoot, the new corporation borrowed from other sources and paid to Raby and Miller $45,000 in money by check payable to Thomas Raby, Inc., and Thomas Raby, Jr., and paid the $5,000, balance of the $50,000 agreed upon as above stated, in goods of that value belonging to the new corporation, to Thomas Raby, Inc. Raby and Miller knew of the payment of the $5,000 in this manner. They were parties

to it, and neither of them made any objection to it until January 15, 1925, a year afterwards. It was also understood between Thomas Raby, Inc., Thomas Raby, Jr., and Broadfoot, at the time of the organization of the new corporation, that Thomas Raby, Inc., a cotton factor in Philadelphia, should handle the product of the mill. This last-mentioned corporation was controlled and managed by Thomas Raby, Jr., and was owned by Thomas Raby, Jr., and Max Miller. The details of all the transactions referred to, with the single exception of the proposition to purchase and the acceptance of the same, was had with and conducted by Thomas Raby, Inc.

Thomas Raby, Inc., directed on February 8, 1924, that the certificates of preferred stock be issued as follows:

| | |
|---|---|
| Jacob Miller | $15,000 |
| Max Miller | 16,000 |
| Benjamin F. Miller | 5,000 |
| Thomas Raby, Jr. | 10,000 |
| Thomas Raby, Jr. | 9,000 |
| Making the total of | $60,000 |

Accordingly the certificates were issued, except that there was an error in the initials of one of the Millers. All the provisions specified in the contract were not incorporated in the certificates. Thomas Raby, Inc., made objection on that account, and Broadfoot answered by telegram that the desired changes would be made, and then went to Philadelphia for the purpose of getting the matter adjusted, and on returning to Atlanta had the certificates drawn as desired.

In handling the product of the mill, Thomas Raby, Inc., became indebted to the new corporation in the sum of about $19,000 for goods contracted for, and not taken and paid for when the market price of such goods declined. This caused a disagreement, for then Raby insisted upon the delivery of the certificates and Broadfoot upon an adjustment of the matter before the delivery of the certificates.

This difference was adjusted between all the parties on May 9, 1924, and Thomas Raby, Inc., instructed Broadfoot to attach the certificates of stock, except those issued to Thomas Raby, Jr., to a draft on Thomas Raby, Inc., for $10,000, which draft Thomas Raby, Inc., agreed to pay. Upon the payment of the draft for $10,000, all the certificates were to be delivered to Thomas Raby, Inc., except the $19,000 par value certificates issued to Thomas Raby, Jr., and these latter were to be held as security for the balance of $9,000 agreed to be paid by

Thomas Raby, Inc. Accordingly, Broadfoot attached the certificates issued to the Millers to the draft and forwarded all through the bank for collection. The draft remained in Philadelphia 10 days, but was never paid by Thomas Raby, Inc. When claimants failed to carry out this agreement, a single certificate was issued to Thomas Raby, Inc., and this is the status of the matter of certificates. On July 18, 1924, another futile attempt was made to settle the matter. Thus the affair stood, with different efforts to make settlement, until September, 1924, when Max Miller filed a bill in the circuit court of Barbour county, Alabama, in equity, setting up that Raby and Miller were then the stockholders of the new corporation, and sought an injunction against the new corporation and its officers to keep them from delivering to Raby the certificates of stock, and undertaking to subject this stock to the payment of a debt of $16,000, which Miller alleged that the old corporation owed him. Injunction was granted and remained in effect until it was dissolved on the petition of the attorney for the trustee in the bankruptcy proceedings now before this court.

On October 28, 1924, Thomas Raby, Jr., assigned his stock in the new corporation to an attorney by the name of Mesirov. No action was ever taken by Thomas Raby, Inc., or by Thomas Raby, Jr., or by Max Miller, as individuals or as trustees of the old corporation, or by Mesirov, to rescind the contract upon which they became stockholders, or to change their status from that of stockholders, until December 18, 1924, at which time Miller undertook to amend his bill for injunction above referred to, and by such amendment to change his position from that of stockholder to that of creditor with a vendor's lien. On January 15, 1925, Raby and Miller, through the agency of the original corporation, the Marcella Cotton Manufacturing Company, undertook to change their status from stockholders to that of creditors.

On January 18, 1925, the new corporation was adjudged a bankrupt. The evidence shows that this corporation, the bankrupt, was insolvent before December 18, 1924, the day Max Miller undertook to change his status from that of stockholder to that of creditor; it was insolvent on January 15, 1925, the day Raby and Miller, through the agency of the old corporation, undertook to change their status from stockholders to creditors; and in fact it was conclusively shown that the bankrupt was insolvent before December 18, 1924.

By proceedings in this court, brought by the attorney for the trustee, the claim of Raby and Miller was filed in this court. In such claim Raby and Miller, who filed their claim as trustees of the old or dissolved corporation, undertook to validate the claim of $65,000 against the new corporation; also claimed $60,000 for an alleged breach of contract in the nondelivery of the certificates of stock, and $5,000 for the alleged nonpayment of that amount of the $50,000 which was to be paid in cash as aforesaid; and also sought to have a vendor's lien declared upon the mill property, upon the ground that the preferred stock and the $5,000 constituted a part of the purchase price to be paid, and had not been paid. The only debt that the old corporation owes is the alleged debt to Miller of $16,000.

The referee found that the filing of the claim by Raby and Miller as trustees of the old corporation was merely the use of a corporate fiction, and that Raby and Miller were the real claimants. He also found that they had no vendor's lien. He further ascertained that they are stockholders, and not creditors, of the bankrupt.

The claimants do not seek a review of the judgment of the referee's finding that they had no vendor's lien; but they now ask that a review be had of the finding of the referee which declares that they are stockholders. Thus the question is: Are the claimants stockholders, or are they creditors of the bankrupt? Of course they cannot be both, for there is no relation of debtor and creditor between holders of stock and creditors of the corporation. Janney & Cheney v. M. & P. Nat. Bank, 98 Ala. 515, 13 So. 761. Manifestly, if they are stockholders of the bankrupt, they cannot maintain the claim upon the alleged breach of the contract hereinbefore fully referred to. If they are stockholders, then so far as the bankrupt is concerned there is nothing left for consideration except Max Miller's claim of $16,000, which was the basis of the suit in equity in the state court; and this for the reason the Marcella Cotton Mills owes nothing to the Marcella Cotton Manufacturing Company, or any of them, so far as creditors are concerned.

It must be said that the issue presented is between the creditors of an insolvent corporation and those who held themselves out to be and maintained the attitude of stockholders while the debts were being created, which debts caused the condition of insolvency; and they themselves were largely instrumental in bringing about the condition

of such insolvency. It may be asked: Who are the claimants now asking for this review? As Thomas Raby, Jr., owned 999 shares of the stock of the old corporation, and Max Miller owned only one share, a division of the claim would be $64,435 to Thomas Raby, Jr., and $65 for Max Miller. The claim, therefore, is really and only the interest of Thomas Raby, Jr., as Max Miller's interest is so small as to be practicably negligible. Thomas Raby, Jr., was the president and manager of Thomas Raby, Inc. Admittedly such concern now owes the bankrupt and is unable to pay the sum of $34,000, which indebtedness Thomas Raby, Jr., caused to be created, and liability for which he now seeks to avoid by the use of the corporate fiction hereinabove designated as the old corporation. Max Miller's interest is a claim of $16,000 for the collection of which he began his said suit in the circuit court of Barbour county.

It was established by the testimony that 999 shares of the old stock, the basis of $60,000 of this claim, belonged to Thomas Raby, Jr., on the date of the execution of the deed to the mill property and the transfer of this stock to the new corporation, on December 23, 1923. On February 7, 1924, all of the preferred stock of the new corporation belonged to Thomas Raby, Inc., and on October 28, 1924, this stock was transferred to Mesirov. If this stock belongs to Mesirov, Thomas Raby, Jr., and Max Miller have no right to file their claim here in any capacity. If the stock belongs to Thomas Raby, Inc., or Thomas Raby, Jr., and Max Miller, they have no right to file the claim as trustees of the old or dissolved corporation. Thomas Raby, Inc., received in goods $5,000, balance of the $50,000 that was to be paid in cash. The same concern belonged to Thomas Raby, Jr., and Max Miller, who, in asserting their claim, are trying to repudiate the payment by filing this claim as trustees of the old dissolved corporation. Under the contract of purchase the old corporation was not to receive anything, but Miller and Raby were to receive and did receive as hereinabove stated. Mesirov, the transferee of the stock, has agreed that the claim be disposed of by this proceeding, and has thereby identified himself with and subordinated himself to the claimants, whoever and whatever claimants may be.

Attention must be given to the letter of February 7, 1924, of Thomas Raby, Inc., directing how this stock should be issued, and the testimony of Thomas Raby, Jr., on cross-examination, in which he stated that Thomas Raby, Inc., directed the certificates to be issued to the persons named in the letter of February 7, because, as he said, such persons agreed to buy such stock, except Max Miller, who claimed that the Marcella Cotton Manufacturing Company owed him $10,000, and he agreed to take the stock. He (Miller) signed the deed of conveyance to the property of the old mill as an officer, and did all other things in carrying out the provisions as requested by Thomas Raby, Inc. This corporation exercised full control and ownership over the stock in every way; Miller agreeing thereto. Miller was a large stockholder in Thomas Raby, Inc. Nothing was ever said by him, so far as the testimony shows, about the payment of the $45,000 in cash and the $5,000 in goods. Nothing was ever said while Thomas Raby, Inc., was going in debt to the bankrupt in the sum of $34,000. It is significant that, when Thomas Raby, Inc., reached the point where it could not meet its own obligations, and after the bankrupt had become insolvent, then Thomas Raby, Jr., endeavored to assume the position of trustee of the Marcella Cotton Manufacturing Company in order to make this claim. Manifestly this is a makeshift or subterfuge for the benefit of Thomas Raby, Inc., Thomas Raby, Jr., and Max Miller. It is strange that, if the Marcella Cotton Manufacturing Company owed $16,000 to Max Miller, as he claimed, he did not get the money from Thomas Raby, Inc., when the $45,000 was paid, as that was the only money to be paid. He was a party to having this money paid, and he cannot now in good faith complain.

Moreover, Thomas Raby, Inc., Thomas Raby, Jr., and Max Miller, so far as their interest is concerned, were one and the same, and they used the name of the old or dissolved corporation to transfer the property by deed only for the purpose of making a good title of record. They were the beneficiaries of the transaction, and they filed the dissolution articles for the purpose of carrying out the trade for their benefit. It must be borne in mind that Max Miller was throughout the entire transactions in entire accord with and acquiesced in the representation of his interest by Raby as an individual and by Raby, Inc., until at or near the time he filed the bill in the circuit court of Barbour county, in September, 1924.

[1, 2] It is familiar that a court of equity will not allow a corporate fiction to destroy the rights of creditors, where an element of fraud either in fact or in law exists, and that the form or guise will be disregarded

and the substance considered. It goes without saying that the trustees of the dissolved corporation can stand in no better position than a going concern, where the beneficiaries of such dissolved corporation are the parties to the fiction and there are no other beneficiaries. The evidence shows that, as trustees of the Marcella Cotton Manufacturing Company, Thomas Raby, Jr., and Max Miller were mere subsidiaries or agents of Thomas Raby, Inc., and as such can stand in no better position than Thomas Raby, Inc.; for, if one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability for its acts, and even when one corporation is the owner and proprietor of another, the latter will be regarded as a mere trade-name, and the real beneficiary cannot resort to the fiction of claiming in the name of the latter to defeat bona fide creditors. Fourth Nat. Bank v. Portsmouth Cotton Oil Refining Corp. (C. C. A.) 284 F. 718.

[3] Thomas Raby, Jr., and Max Miller elected to proceed for themselves in this transaction as Thomas Raby, Inc., and continued that course of conduct for nearly a year while the debts against the bankrupt were being created; and now, since January 13, 1925, they have been and are endeavoring to establish this claim as trustees of a dissolved corporation, for the benefit of stockholders and creditors of such dissolved corporation, when they are or were the only stockholders and creditors of the dissolved corporation, thereby seeking to escape from their standing as stockholders in the new corporation, and seeking to become creditors of the bankrupt, the new corporation. A court of equity, and this court is such, will brush aside any such subterfuge and go to the merits of the matter involved. Ciere Clothing Co. v. U. T. & S. Bank, 224 F. 363, 140 C. C. A. 49; In re Muncie Pulp Co., 139 F. 546, 71 C. C. A. 530, 14 Am. Bankr. Rep. 70.

Now, as to the consideration of the rescission of the contract and the claim for damages based upon the alleged breach of the contract in the refusal to deliver the certificates of stock, it is remembered that this is a contest begun by a trustee in bankruptcy to protect the creditors of an insolvent corporation. In such case the law is different from what it is between solvent corporations and subscribers for stock in such solvent corporations, for the assets of an insolvent corporation are subject to a trust for the benefit of its creditors. In re Fech-

eimer Fishel Co., 212 F. 357, 129 C. C. A. 33; Code of Alabama 1923, § 7062.

[4] As between creditors of an insolvent corporation and stockholders, the policy of the law is always to favor the creditors, especially when the conduct of the stockholders contributes in the least to the creation of the creditors or insolvency of the corporation. The law has regard for the general creditor, and even where fraud in securing the subscription to stock is proven, and on such ground the subscription is rescinded, yet any claim of such subscriber is subordinated to the claims of general creditors. Green v. Stone, 205 Ala. 381, 87 So. 862; Meholin v. Carlson, 17 Idaho, 742, 107 P. 755, 134 Am. St. Rep. 286. The decisions of the federal courts are even more favorable to general creditors, as they hold that general creditors, relying upon a deed, as in this case, have priority over even a vendor's lien. Bayley v. Greenleaf, 7 Wheat. 46, 5 L. Ed. 393.

It may well be asked: Were the claimants here ever stockholders, and, if so, was that status ever changed so far as the creditors are concerned? It was understood and agreed between the three of them—that is Broadfoot, Raby, and Miller—that Broadfoot was to organize a new corporation to take over the property of the old corporation, and the new corporation was to pay Raby and Miller $50,000 in cash and $60,000 preferred stock in the proposed new corporation. In short, Raby and Miller were to pay for this preferred stock with the property of the Marcella Cotton Manufacturing Company, all the stock of which they owned, receiving an agreed difference of $50,000. The new corporation was duly organized, with the articles of incorporation providing for the $60,000 par value preferred stock. The new corporation is the Marcella Cotton Mills, the bankrupt.

[5] Raby and Miller carried out the agreement, and when they did they became stockholders, as having bought and paid for the stock. In Citizens' S. & T. Co. v. Ill. C. R. Co., 182 F. 607, at page 611, 105 C. C. A. 145, it was held that the owner of a paid stock subscription is the full beneficial owner of the stock; the stock certificate being merely evidence of ownership. In that case the court required the corporation to deliver a certificate of stock as evidence of title in the year 1903, expressly stipulating that for a long time prior thereto the complainants had been the full beneficial owners, although they did not have the certificate as evidence of title.

Now, in the case at bar, if a proposed creditor of the bankrupt had gone to the public recording office he would have found that the conveyance under which the bankrupt held its property recited and acknowledged full payment of the purchase price therefor; and had he examined the minutes and records of the bankrupt he would have found that the issuance of the certificates for the $60,000 of preferred stock was authorized. These were issued in February, 1924, but were not delivered. However, in May, 1924, new certificates for the same stock were issued in conformity with the original contract of sale for the issuance of the stock and under the express directions of Raby and Miller.

[6] It is settled law that preferred stockholders of a corporation are stockholders, and are not creditors of the same class as non-stockholders. Spencer v. Smith, 201 F. 647, 120 C. C. A. 75; In re Fifty Gold Mines Corp. (D. C.) 190 F. 105. Furthermore, the claim filed in this case is one for damages upon the alleged refusal to deliver certificates of stock; the claim itself being predicated upon the proposition that claimants were stockholders. Ineluctably the claimants are stockholders.

Now, then, coming to the inquiry: Was there a wrongful refusal to deliver the certificates of stock; and did claimants rescind and declare upon a breach of contract upon such wrongful refusal? Raby testified that he made repeated demands for the certificates of stock. Broadfoot testified that he would not deliver the certificates until settlement was had of the indebtedness of Thomas Raby, Inc., to the new corporation. In this situation, who are the claimants? Why is resort had to the subterfuge of trustees of the Marcella Cotton Manufacturing Company? In what capacity did Raby make his repeated demands—as Thomas Raby, Jr., or as Thomas Raby, Inc., or as Thomas Raby as trustee of the Marcella Cotton Manufacturing Company, or as agent of Mesirov? If they were identical of interest, it is of no moment in what capacity the demands were made, because Marcella Cotton Mills, under the law of Alabama, had a lien on the stock for the debt of Thomas Raby, Inc., and could have sold the stock by merely giving Thomas Raby, Inc., 30 days' notice by letter through the mails. Code of Alabama 1923, § 7000. If the interests of Thomas Raby, Jr., Thomas Raby, Inc., and Thomas Raby as trustee of the Marcella Cotton Manufacturing Company were not identical, then in which capacity was demand made? Raby

does not say. Under the contract of purchase he was not to receive the stock as trustee of the Marcella Cotton Manufacturing Company. As such trustee he was not entitled to receive the certificates. No other than the person entitled to receive them—that is, the stockholder—could have made demand for the certificates. Notwithstanding this, he is here alleging the wrongful refusal to deliver to him as such trustee certificates he was not entitled to as such trustee. The claim must fail here.

[7, 8] Did the claimants rescind and declare upon a breach of contract upon a wrongful refusal to deliver the certificates? In the event of the wrongful refusal of a corporation to deliver the certificates of stock to a purchaser, the purchaser may pursue one of two courses: He may maintain his status of a stockholder, if he desires, and pursue the proper legal remedy to have the certificates issued to him; or he may, upon such wrongful refusal, declare a breach and assert claim for damages based upon the refusal to deliver the certificates. Powell v. Sammons & Dotes, 31 Ala. 552; Pence v. Langdon, 99 U. S. 578, 25 L. Ed. 420. He must make the election of his remedy, and the election, when made, is final. Alabama Tailoring Co. v. Judkins, 205 Ala. 601, 88 So. 865; McAnelly Hardware Co. v. Bemis Bros. Bag Co., 208 Ala. 394, 94 So. 567; Pence v. Langdon, supra.

It must be observed that the claimants set up their claim of refusal to deliver the certificates in January, 1924, yet in September of the same year Max Miller, in his bill in the circuit court of Barbour county, Ala., sets up that they are stockholders. Thomas Raby, Jr., in October, 1924, holding himself out as a stockholder, transferred his stock to Mesirov. So Raby and Miller elected to maintain their status as stockholders and did so until December 18, 1924, and January 15, 1925, the dates of the respective bills, one amended, filed in the circuit court of Barbour county, both of which have been referred to herein.

[9] On December 18, 1924, and ever since, the Marcella Cotton Mills was, has been, and is insolvent, and the rights of the creditors are paramount. Where the right of a subscriber for corporate stocks to recover back money paid on his subscription in the event of a wrongful refusal of the corporation to issue the certificates is a remedy, it can only be invoked when and where the subscriber gives notice of his election to pursue it and makes demand for the money. Davis v. Lime Cola Bottling Co., 18 Ala. App. 562,

93 So. 330. Raby, Miller, and Broadfoot were parties to the whole promotion scheme or milling enterprise. Broadfoot testified that Raby and Miller were parties to the venture, and neither Raby nor Miller ever denied it, though they both testified on the hearing before the referee. Broadfoot then testified, and it is not contradicted, that the debts to the Citizens' & Southern Bank, Frank Hawkins Investment Company, and Mr. Montgomery, of Greenville, S. C., all filed in this case and in evidence in the contest, were contracted upon the express understanding that Raby and Miller were stockholders, and not creditors. Broadfoot's testimony further shows that the mill property is the same now as when bought, except that the manufactured stock in process is gone, and electrical machinery has been added, upon which machinery there is a balance due of some $3,500. The evidence shows that the claims of the general creditors amount to $85,000 or more.

If the claim here urged and contested be allowed, the debts of the bankrupt would exceed $150,000. The appraisal of the bankrupt estate, when the cloth on hand and the stock in process and the raw cotton is eliminated, shows $74,000 as the assets of the Marcella Cotton Mills. This cloth on hand, stock in process, and raw cotton should be eliminated from present consideration, because the trustee at the time of the appraisal was operating the mill under a contract by which Dean & Moore retained title to the cloth, the stock in process, and raw cotton; they having furnished the raw cotton for such cloth, stock in process, and raw cotton itself. The assets of the bankrupt were sold on May 15, 1925, for the sum of $45,000. After the mill became insolvent, Miller in December, 1924, and Miller and Raby in January, 1925, in their respective suits in the state court in Barbour county, and in this claim here insisted upon, undertake to complain of the nondelivery of the certificates of preferred stock, when Miller, in October before, had secured an injunction forbidding the delivery of these very certificates, and Raby, on October 28, 1924, had transferred his stock to Mesirov. Surely up to the last-named dates they were not claiming a breach of contract. They cannot claim any breach of contract since those dates, when an injunction was in force, at the instance of one of the parties, forbidding the delivery about which complaint is now made. This is the inevitable conclusion in considering all the facts and circumstances connected with the matter. In re Beaunisne's Estate, 182 Ill. App. 238.

The claimants here must be held to be stockholders. In Newton Nat. Bank v. Newbegin, 74 F. 135, 140, 20 C. C. A. 339, 344 (33 L. R. A. 727), the court very aptly says: "When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and assume the rôle of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion. If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid—in all of these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent." The foregoing is cited with approval in Re Morris Bros. (D. C.) 282 F. 674, and in Re Wm. C. Jones Co. (D. C.) 289 F. 262.

The evidence is convincing that Raby and Miller elected to maintain their status as stockholders. They had the product of the mill turned over to Thomas Raby, Inc., in which concern they were stockholders. They both knew the financial condition of Thomas Raby, Inc. In his letter of February 9, 1924, Thomas Raby, Jr., insisted that the product of the mill go to Thomas Raby, Inc. Thomas Raby, Inc., under Thomas Raby, Jr.'s, management, not only failed to pay for the $19,000 worth of that product, but caused a further loss to the mill of $15,000 by reason of its failure to take certain products of the mill, previously contracted for, after the market had declined. After the insolvency of the bankrupt, they cannot maintain a claim as creditors. It may not be too much to say that Thomas Raby, Inc., should be made to pay the $34,000 of its indebtedness due the bankrupt, to go to the benefit of the general creditors.

[10] It is urged by claimants that, if their claim is not equal to that of other creditors, then it is a claim subordinate to those of creditors who knew nothing of the alleged unpaid purchase price on the property, but acted upon the faith of unqualified ownership of the property by the bankrupt. For the reasons hereinabove set out, it cannot be

held that the claimants are creditors in any guise. The holders of preferred stock are entitled to have their stock discharged in full ahead of any disbursements to common stockholders. It is apparent that, if all the assets have come to the hands of the trustee, as he believes to have taken place, the general creditors will not be fully paid. However, if there should be funds left in the hands of the trustee after the full payment of creditors, appropriate orders will be made for the payment of any such funds to the holders of preferred stock.

It follows that decree will be entered in harmony with this opinion, and confirming the report, findings, and conclusions of the referee.