**TEXAS EMPLOYERS' INS. ASS'N v. GLASS et al. (No. 2096.)**

Court of Civil Appeals of Texas. El Paso.
Feb. 2, 1928.

Rehearing Denied Feb. 23, 1928.

1. **Master and servant ⬤➾417(3½)—Attorney for compensation claimant, allowed portion of award as fee, held not necessary party in action to set aside award (Rev. St. 1925, art. 8306, §§ 7c, 7d; art. 8307, § 5).**

In suit to set aside award made by Industrial Accident Board, attorney representing claimant in procuring award and allowed percentage fee from sum awarded *held* not necessary or proper party, in view of Rev. St. 1925, art. 8306, §§ 7c, 7d, and article 8307, § 5.

2. **Master and servant ⬤➾417(3½)—Ruling in suit to set aside award, relative to misjoinder of parties, if error, would not affect court's jurisdiction.**

In action to set aside award made to compensation claimant, *held*, that court's ruling rel-

ative to misjoinder of claimant's attorney as party defendant, if error, would not affect jurisdiction of trial court.

3. **Master and servant ⬤➾385(20)—Manifest hardship and injustice held not so apparent as to require lump sum payment of compensation.**

Manifest hardship and injustice *held* not so apparent, in award for injury resulting in some impairment of mind, as to require payment of compensation in lump sum instead of from week to week as it accrued.

4. **Master and servant ⬤➾417(3½)—Evidence as to injured employee's being charged with negligent homicide for acts subsequent to original injury held properly refused in suit to set aside award.**

In suit to set aside award to compensation claimant, evidence by plaintiff as to claimant's having been charged with the offense of negligent homicide growing out of an accident subsequent to the original accident in which claimant was hurt *held* properly refused.

5. **Trial ⬤➾114—Compensation claimant's counsel's emphasizing to jury that Industrial Accident Board had made award held not ground for reversal.**

In suit to set aside compensation award, claimant's counsel's emphasizing to jury that an award had been made by the Industrial Accident Board and that jury would understand what that meant *held* not ground for reversal.

6. **Appeal and error ⬤➾304—In suit to set aside compensation award, evidence held to show jury's misconduct in discussing award, requiring reversal.**

In suit to set aside award to compensation claimant, evidence *held* to show misconduct of jury in discussing making of award and apparently basing part of their decision not to set aside the award on the very fact that an award had been made, so as to require reversal.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by the Texas Employers' Insurance Association against Robert T. Glass and another to set aside an award of compensation by the Industrial Accident Board to Robert T. Glass and his attorney. Judgment for defendants, plaintiff appeals, and defendants also assign error. Reversed and remanded.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

R. A. D. Morton and John M. Worrell, both of El Paso, for appellees.

WALTHALL, J. This action was brought by Texas Employers' Insurance Association to set aside an award of compensation by the Industrial Accident Board to Robert T. Glass and his attorney, R. A. D. Morton, Esq., for injuries sustained by claimant, Glass, while an employee of the Empire Products Corporation as an out of town delivery truck salesman, his duties being to

---

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sell from the truck the various products of his employer, such as soda water, candies, etc. During the times involved in this controversy appellant carried insurance, under Workmen's Compensation Law of this state, which covered Glass. On August 4, 1926, on an out of town public highway Glass got down off the truck he had been driving, and while crossing the road to take an order for goods he was struck by a passing automobile, which caused him to fall on the concrete paved road, striking his head, resulting in injuries and his being placed in a hospital for some two weeks. On August 24th Glass returned to his former employment and continued his customary duties as truck salesman until October 12, 1926, at which time he drove the truck on a public highway some 30 miles out from El Paso and near the Mexican border, and near which was situated a saloon, locally known as the "Hole-in-the-Wall." In company with another man, on his return to El Paso Glass stopped at the saloon and drank some quantity of alcoholic liquor. Thereafter continuing his return to El Paso on his employer's truck, Glass came in collision with another conveyance, resulting in the death of one August Dindinger and injuring another man, but Glass himself was not thrown from his seat nor personally injured in any way other than the mental distress caused by his participation in the accident as above. On his return Glass ceased to work for the Empire Products Corporation and has not worked for them since. Glass attempted several times following the last-stated accident to work for other parties, but could not hold the job. He then made demand on appellant for payment of compensation, which appellant declined on the ground that Glass was not suffering from the result of any industrial accident for which appellant was responsible, and, on appellant's refusal to pay, Glass made claim for compensation with the Industrial Accident Board. Glass claimed total and permanent disability on the ground that by reason of the first accident he had sustained injuries causing him to become a person of unsound mind.

The Industrial Accident Board on March 3, 1927, entered its final ruling and decision in the matter of claimant Glass for compensation, allowing his claim for compensation, and, under section 7c of article 8306, R. C. S. 1925, in the decree fixed the fee of Attorney Morton for representing the interest of claimant Glass. It was admitted as a fact that Mrs. Sarah Glass, wife of Robert T. Glass, was duly appointed guardian of the person and estate of Robert T. Glass after this suit was filed, and that such appointment was not made in a lunacy proceeding.

The case was tried with a jury, and submitted upon special issues. The jury made findings substantially as follows: That on August 4, 1926, Glass, as a result of an automobile accident, suffered total permanent incapacity for work; that at the time Glass signed the instrument introduced in evidence, denominated "compensation settlement receipt," that by reason of impairment of his mind, if his mind was impaired, he was unable to comprehend the nature and consequences of the signing and delivery thereof; the average weekly wages of Glass on the 4th day of August, 1926, was $30 per week. (The amount of the average weekly wages per week was agreed to and as found by the jury.) Appellee's motion for a lump sum was denied by the court, but judgment was entered in favor of Glass and his guardian for compensation at $18 per week, for 401 weeks, from August 12, 1926, the court finding that the said date was the eighth day after the injury and the commencement of claimant's incapacity.

Judgment was entered for a lump sum for the compensation already accrued and interest, less a credit of $36 already paid. Also judgment was entered for the rest of the 401 weeks (357) to be paid in weekly payments, with interest. The court found that R. A. D. Morton, as attorney, had represented the interests of the claimant Glass before the Industrial Accident Board and in the trial court, and adjudged to Morton one-third of the amount of the award to Glass.

The trial court further ordered and decreed that upon application of any person interested showing a change of condition, mistake, or fraud on the part of Glass, the award made may be reviewed, diminishing or increasing the compensation award, and to that end the case to remain on the court's docket.

### Opinion.

Appellees filed pleas in abatement to the jurisdiction of the trial court, which the court heard and overruled, and to which ruling appellees excepted and assign error. The facts upon which the pleas are based were agreed to in open court, and, briefly stated, are substantially as follows: Shortly after the Industrial Accident Board made the award appellant instructed its attorneys at El Paso to appeal the case; notices of appellant's intention not to abide by the award of the board were served on Glass and his attorney, Morton; Mr. Edwards, of appellant's attorneys, and acting for appellant in the matter, told Morton verbally that his, Edwards', firm was going to appeal the case, and that there was never any intention to abandon the appeal as to either Glass or Morton; that he had prepared in his office citations in the case for service on Glass; that Edwards took the citation to the district clerk's office and had it issued March 29, 1927 and placed it in the hands of the chief deputy sheriff and requested that it be served, and advised the chief deputy sheriff

that he, Edwards, did not know where Glass was, but he could be found by making inquiry of Morton, his attorney; that Edwards' reason for not preparing and having citation for Morton at the same time as the one for Glass was because Edwards felt sure from prior experience with Morton, being an attorney, Morton would not care to run up additional court costs by having citation served on him; that after leaving the citation for Glass in the sheriff's office with the instructions as above, Edwards went to Morton's office for the purpose of telling Morton that he had filed the suit, and supposed that he, Morton, would waive citation and service without the necessity of service on him; that Morton was not in his office at the time and Edwards did not get an opportunity at that time to see Morton; that Edwards supposed that as soon as Glass came to Morton with the citation which would be served on him, Glass, that Morton would answer for both Glass and himself; that Edwards did not know until May 4, 1927, that Morton would want citation served on him; that about the 4th day of May, 1927, Morton told Edwards he was not going to waive anything; that Edwards immediately prepared another citation and had same served on Morton on May 4th; that citation was issued for Glass on March 29, 1927, and served on Glass on April 20, 1927; Glass was in the city of El Paso at all times from March 29, 1927, to April 20, 1927, and his name was in the city directory. The citations for Glass and Morton and the sheriff's returns thereon were introduced in evidence on the hearing on the plea. No question is raised as to either, any they seem to be in good form. The trial court overruled the plea in abatement to the court's jurisdiction, and in the same order overruled appellees' special exception of Morton in his answer and cross-action on the ground of misjoinder, to the effect that he was not a necessary or proper party to the suit, his rights and interest being only in the nature of a percentage of whatever might be recovered through Glass.

Appellant's petition states that Morton is joined in the suit on the ground "that said Morton is entitled to a portion of the recovery, if any." In appellees' answer and cross-action of Glass and his guardian it is stated, in substance, that Morton had been employed by Glass and his employment confirmed by his guardian; that Morton had been employed to prosecute the claim for compensation, it having been agreed that Morton shall have the maximum percentages allowed by the Texas Compensation Law as compensation for his services as attorney.

[1] First, as to Morton as a party defendant in the suit, he is, in our opinion, under the facts stated, neither a necessary nor a proper party to the suit to set aside the award. Under section 7c of article 8306,

R. C. S., the fees of an attorney for representing claimants before the board are permitted and allowed, and which the board considered and allowed in this instance. By section 7d of the same article it is provided that for representing the interest of any claimant in any manner carried from the board into the courts, it shall be lawful for the attorney representing such interest to contract with any beneficiary under this law for an attorney's fee, not to exceed the amount allowed, to be fixed and allowed by the trial court. It will be seen that the fees of an attorney under the two provisions of the statute, one before the board and the other before the trial court, are separate and distinct from each other and to be considered and allowed by different tribunals in the prosecution of the claim.

A part of section 5, art. 8307 (part 2), provides that any interested party who is not willing and does not consent to abide by the final ruling and decision of the board shall give notice to the adverse party and to the board that he will not abide the final ruling and decision. In Harris et al. v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 257 S. W. 998 (writ refused), without reviewing the case at length, it is held, in a suit to set aside the award by the board, that an attorney for the claimant for compensation is not an adverse party requiring notice of intention not to abide by an award of the board. If the attorney of the claimant before the board and to whom an apportionment of the claim for compensation allowed by the statute and fixed by the board has been awarded is not an adverse party to that of appellant seeking to set aside the award made by the board, it would seem to follow that such attorney is neither a necessary nor a proper party to such suit. His interest in his recovery by reason of the suit stands or falls with that of the claimant.

Now, in the suit to set aside the award, section 7d of article 8306 provides that for representing the interest of the claimant it is lawful for the attorney representing such interest to contract with any beneficiary under the law for an attorney's fee, not to exceed the amount fixed by that section, the fee contracted to be fixed and allowed by the trial court.

Where the attorney representing the interest of the claimant before the trial court in the trial de novo has made a contract with the claimant for a fee for services as an attorney additional to the fee allowed by the board and not to exceed one-third of the amount recovered, the amount to be fixed and allowed by the trial court, he is still not an adverse party, to be served with notice or to be sued with the claimant to set aside the award.

In the case of Watts v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 264 S. W. 186,

to which we are referred, Loftus, the attorney for Watts, was claiming a fee in addition to full compensation allowed to Watts by the statute and had filed a pleading asserting such claim, and for that reason the court overruled Loftus' contention that he was not subject to costs of suit with Watts.

In each of the cases of Soloranzo v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 264 S. W. 121, and Texas Employers' Ins. Ass'n v. Fitzgerald (Tex. Civ. App.) 292 S. W. 925, and to which we are referred by appellee, the attorney representing the claimant sought no recovery either before the board or in the trial court for an allowance other than the percentage of compensation allowed by the statute, and under such circumstances it was held that it was not necessary to make the attorney a party to the suit to set aside the award. We see no conflict in the holdings as insisted by appellees.

[2] The ruling of the court on the question of misjoinder, if error, does not affect the jurisdiction of the trial court, nor does the ruling in any way prejudice any interest of appellees.

[3] The trial court refused to compel a settlement of the compensation allowed by a lump sum payment. Appellees assign error on such refusal. While the jury found that as a result of an automobile accident Glass suffered total and permanent incapacity for work, such condition is by reason of his unsound mind. After a very careful review of the evidence, especially that of the doctors who had examined Glass and testified to his mental condition from the time of the accident to shortly before the trial, we cannot say that the trial court was in error in refusing to compel a lump sum settlement. It is declared to be the express purpose of the law to make payment of compensation from week to week as it accrues, and it is only in special cases where it is made to appear that manifest hardship and injustice will result by payment of the compensation by installments that a lump sum is required. It does not so appear.

In view of the disposition we have concluded we must make of the case on appeal, and in view of another trial, we omit any comment on the evidence as being sufficient to require the submission of the case to the jury, as raised by appellant's first four propositions.

[4] The error assigned to the refusal of the court to permit appellant to prove by the deputy county clerk that Glass had been charged with the offense of negligent homicide following and growing out of the death of August Dindinger on October 12, 1926, and that such charge had been duly entered and docketed on the court records of that court as a criminal proceeding against Glass, and that such proceeding was and still is pending, presents no error and the assignment is overruled.

[5] Counsel for Glass, in his closing address to the jury, said:

"This is a case wherein the Texas Employers' Insurance Association is plaintiff and Glass is defendant. It is a suit to set aside an award which has been made by the Industrial Accident Board. You will understand what that means."

It is insisted that the words of counsel give effect and prominence to what men having behind them the weight and dignity of the sovereignty of the state have done, rather than what the jury themselves should consider and pass upon as jurors. While an intelligent jury would necessarily know the character and purpose of the suit, the reference of counsel to the character of the suit, as above, could of itself hardly be reversible error, yet such remark may have and most probably did cause the jury to recall and consider the action of the board as complained of by appellant in its motion for a new trial.

[6] It is submitted that the jury was guilty of misconduct in discussing among themselves and giving weight to the action of the board in making award to Glass, in returning their verdict. Eight of the jurors, including the foreman, testified on the hearing on appellant's motion for a new trial. The fact that the board had made an award allowing Glass compensation for his injuries had not been made an issue either in the pleading or evidence. On the motion for rehearing on the question of misconduct of the jury, the record, briefly stated, and only on the material facts complained of, shows the following.

G. B. Jackson, the foreman, said:

"Among the first things some of them said: 'Well, let's vote,' and I says: 'Don't vote yet, let's talk this thing over just a little before we vote to see if we all understand each other,' and what this thing is all about,' and then we discussed it a little more before we voted. I believe I asked this question: 'Do all you gentlemen understand just what this is all about?' and one of them said: 'Yes, there has been an award made.' I says: 'You understand this insurance company is suing the man that got hurt, do you understand what we are doing?' and they said: 'There has been an award made, and we are to decide it.'"

After a brief discussion of the case the first ballot stood ten to two, in favor of an award. Jackson said:

"I cannot say who it was that brought the matter up that the Industrial Accident Board had already found against the company, and that the best thing the jury could do would be the same thing. * * * I believe that matter was mentioned in the jury room. * * * There was a fellow who did not understand it, he was one of the two; after we talked it over a little while he changed back, and one of

the other fellows changed back again the other way. I do not think this argument took place before any balloting was ever done. I am inclined to think it took place after the first ballot for the purpose of getting Mr. Reynaud and Mr. Kusinsky to change over. * * * I do not think that I would put it as strong as you do, that the jury could not do better than stand by the award of the Industrial Accident Board, but that matter was mentioned. I do not consider we were basing our decision entirely upon what the board had awarded rather than our decision. The award of the board was given some weight, I cannot say just how much."

On examination by the court, the witness, after repeating some matters already stated, said:

"The discussion about the 'Industrial Accident Board was before we agreed upon our answer to the first question. It seemed to be just a little vague or hazy in the men's minds just exactly what course we would take there, but it was discussed, but it was mentioned if we voted on the first question which most of them were inclined to do, that we would only confirm the Accident Board's decision."

Juryman Dietert testified; after stating in substance some matters already noted in Jackson's statement, said:

"They [Reynaud and Kusinsky] discussed among themselves in reference to the award of the Industrial Accident Board. * * * I do recall something was said about what the Accident Board had done, but after the third ballot Mr. Kusinsky asked [Reynaud] what the Labor Board consisted of."

Dave Crockett, juryman, testified; said in part:

"The first ballot was ten to two. Mr. Reynaud and Mr. Kusinsky were the two. * * * There was something said in there about the award of the Industrial Accident Board; Mr. Reynaud spoke about this board; he did not understand; he thought they were suing the Industrial Accident Board instead of Mr. Glass. * * * [Referring to a previous conversation with appellant's attorney, witness said] I do not remember anything said that the Industrial Accident Board had already made the award in favor of Glass, and that we could not improve on that, I said something to that effect. I told you that in substance * * * Reynaud did all the talking about that (the award of the board); I told all of them that Reynaud was an insurance man, and he did all the talking. There was some talk that the board had already made the award against the company by the fact that the case was against the board, not against Mr. Glass. * * * The discussion did take place that the board had already made the award against the company. * * * I understood the amount was $8,000, so many weeks at $30 a week. We figured so many weeks. * * * Some one said the board had awarded him $8,000."

Peter Remple, juryman, testified:

"After we retired to consider our verdict, all I remember in regard to the Industrial Accident Board, some one asked what this board was, who appointed the board that made this award, and some one, I believe, explained how the board was created."

E. C. Flores, juryman, testified:

"We had a little discussion in the jury room after the court had retired concerning what the award was that had been made by the Industrial Accident Board. * * * The discussion was that the board was some kind of a state organization, or labor organization. * * * I recall some argument to the effect among the jurors that the Industrial Accident Board had already decided this thing against the Texas Employers' Insurance Association, and the best thing they could do was to go ahead and do the same thing. * * * There was something said to the effect that the board had awarded him $8,000. * * * The discussion was that the Industrial Accident Board had already decided it; that they had already talked it over and allowed that. My understanding was that the board had a meeting and talked the case over and decided what he was to get. I don't know the exact amount that he was to get, but something like $8,000. I do not recollect which juryman said it was $8,000; several of them said something about that. * * * We talked about it. I took that into consideration."

C. E. Kusinsky, juryman, testified:

"I asked what this board was." Remembered that the $8,000 was mentioned; asked Reynaud what the board consisted of, and he explained it to witness. Witness did not understand just what the board was.

H. F. Reynaud, juryman, testified:

Examined by the court, said: "There was no discussion about the award of the Industrial Accident Board before we voted the first time, the only discussion in reference to that was after." Examined by the court, said: "I told Mr. Kusinsky that the board was a board that passed on these things, and then they made an award, and the company was trying to set aside this award."

The jurymen are not entirely agreed as to all that occurred or was said in regard to the consideration of the award made by the board. Every juryman who testified said the award made by the board was mentioned; some said it was considered and argued; some said it was argued to the effect that the board had already decided it against the appellant and that the best thing the jury could do was to go ahead and do the same thing; one juryman said he took the action of the board into consideration. The jury evidently, from the above, assumed to discuss the board, its organization and functions, the fact of the award and the award made. The consideration given to the action of the board was on the material issues in the case, the very issues the jury was to consider and pass upon and fix. We can well see how the jury, in this character of suit, could consider the action of the board, and without any intention of violating any instruction of the court or the law, and yet

do both. We think the fact of misconduct of the jury has been clearly shown. El Paso Electric Co. v. Gambrell (Tex. Civ. App.) 292 S. W. 577; Letsinger v. Panhandle & S. F. Ry. Co. (Tex. Civ. App.) 286 S. W. 1107, and cases there referred to.

For reason stated, the case is reversed and remanded.