(94 South. 567)

### McANELLY HARDWARE CO. v. BEMIS BROS. BAG CO. (8 Div. 437.)

(Supreme Court of Alabama. Nov. 2, 1922.)

1. Sales ⊜⟶379 — No variance or failure of proof in evidence of plaintiff's breaches of contract, where complete performance was not alleged.

In an action for breach of a contract to purchase seven bales of burlap, where a count of the complaint averred that plaintiff "has carried out the terms of the contract upon its part in this, that they have delivered five bales of said burlap and offered to deliver the other two bales," no variance or failure of proof entitling defendant to the general and affirmative charge resulted from evidence of plaintiff's breaches of the contract by nondelivery of one bale and an overcharge for another; plaintiff not having alleged complete performance by it.

2. Appeal and error ⊜⟶232(1½), 719(4)— Sufficiency of count on demurrer not considered where no assignment questions overruling of demurrer and latter does not specifically criticize count in respect of matter complained of.

The sufficiency of a count on demurrer cannot be considered on appeal, where no assignment of error questions the lower court's action in overruling the demurrer and the latter does not specifically criticize the count in respect of the matter complained of.

3. Contracts ⊜⟶316(1)—Knowledge of facts essential to constitute "election" operating as waiver of breach.

Knowledge of the facts, either actual or imputed, is essential to constitute an "election" or choice between alternatives such as will operate to waive breach of contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

4. Contracts ⊜⟶316(1)—Knowledge of breach imputed to party relying thereon if performance must have been through act of which he must have known.

Where a breach of contract is with respect to an obligation that, to be met, must be performed by an act of which the party relying on the breach could not have been unaware, knowledge of the breach is conclusively imputed to the latter, and his subsequent recognition of the binding quality of the contract operates as an election to treat it as still in force, constituting a waiver of the breach.

5. Contracts ⊜⟶316(1)—Election to treat broken contract as efficacious is final.

An election to treat a broken contract as still efficacious is final.

6. Sales ⊜⟶176(6)—Seller's failure to deliver monthly installment and overcharge for another consignment held waived by seller's acceptance of subsequent consignments, payment of overcharge, and notice to delay delivery of remaining consignments.

A seller's breach of a contract for the sale of seven bales of burlap at stipulated prices, to be delivered monthly from June to December, inclusive, by failing to ship a bale in July and by charging more than the contract price for the bale shipped in September, was waived by the buyer's acceptance of consignments after July, payment of the excessive charge without objection, and request in November that the seller hold the remaining bales until further advised; knowledge of the terms of the contract and hence of the breach thereof being imputed to the buyer.

---

**7. Sales** ⊙‑‑89—**Buyer's order for another quality of burlap than that contracted for held admissible, notwithstanding seller's denial of receipt, on issue as to substitution of such quality for that contracted to be shipped.**

In a seller's action for the buyer's breach of a contract to buy seven bales of burlap, to be delivered monthly from June to December, inclusive, by refusing to receive and pay for two of the bales, where defendant set up plaintiff's breach of the contract by failing to deliver the July bale, in reply to which plaintiff alleged that the breach was waived by defendant's election to treat the contract as still efficacious, as indicated by a letter requesting plaintiff to hold the undelivered bales until further advised, a letter from defendant to plaintiff in June ordering another quality of burlap for shipment in July was admissible on the issue whether such quality was substituted by agreement for that to be shipped in July, though plaintiff denied receiving it or knowing of its existence.

**8. Sales** ⊙‑‑384(2)—**Usual measure of damages for buyer's refusal to receive goods is difference between contract price and market value at time and place of delivery.**

As a general rule, the measure of damages for the buyer's refusal to receive the goods is the difference between the contract price and the market value at the time and place of delivery.

**9. Sales** ⊙‑‑384(2)—**Market value at time to which delivery is postponed at buyer's request is basis for determining damages for refusal to accept, and, if no time is fixed, reasonable time is presumed.**

In determining the time for delivery as a basis for determining the measure of damages for the buyer's refusal to receive the goods, the time fixed by the contract usually controls; but, if the time is postponed at the buyer's request, the market value at the postponed time furnishes the basis, and, if no time is fixed, a reasonable time will be presumed.

**10. Trial** ⊙‑‑141—**Reasonable time for tender of delivery of goods sold is for court when evidence is undisputed.**

What is a reasonable time within which to tender delivery of goods sold is a question of law for the court, where the evidence is undisputed.

Appeal from Circuit Court, Madison County; Robert C. Brickell, Judge.

Action by the Bemis Bros. Bag Company against the McAnelly Hardware Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Affirmed.

Lanier & Pride and Spragins & Speake, all of Huntsville, for appellant.

The party seeking enforcement of an agreement must show that he has done everything on his part which could be done to carry it into effect. 202 Ala. 384, 80 South. 466; 16 Ala. App. 338, 77 South. 932; 198 Ala. 469, 73 South. 648; 201 Ala. 29, 77 South. 323. Where the express contract proved was a modification of the one declared on, defendant is entitled to the general charge. 17 Ala. App. 290, 84 South. 545. The measure of damages is the difference between the contract price and the market value at the time and place of delivery. 35 Cyc. 592; 18 Ala. 264; 200 Ala. 226, 75 South. 984. In order for plaintiff to recover the excess of the contract price over the price on resale, he must have given defendant reasonable notice of his intention to resell, and hold defendant for the difference. 15 Ala. App. 286, 73 South. 148.

R. E. Smith, of Huntsville, for appellee.

A breach of a contract may be waived, where the one entitled to declare a forfeiture by his conduct treats the contract as still in force after the time of the breach. 196 Ala. 337, 71 South. 439. When shipment is to be made at a date to be fixed by the buyer, the measure of damages is the difference between the contract price and market value at the time the buyer declined to accept; and when time for delivery has been postponed indefinitely, the measure of damages is the difference between the contract price and market value at a reasonable time after demanding performance. 179 Ala. 472, 60 South. 270; 6 Ala. App. 103, 60 South. 437; 179 Ala. 553, 60 South. 820, 43 L. R. A. (N. S.) 950. The trial court will not be put in error in refusing the affirmative charge on account of a variance, unless the variance was called to the court's attention at the time. Circuit court rule 34.

McCLELLAN, J. This action, instituted by appellee against appellant, was submitted to the jury on issues tendered by counts 1 and 2 and defendant's general traverse of the complaint "with leave to give in evidence any matter which if well pleaded would be good as a defense either in bar or abatement" of the action. Without objection the trial proceeded as if appropriate traverses or matters of avoidance had been interposed by plaintiff. Jersey Ice Co. v. Banner Cone Co., 204 Ala. 532, 86 South. 382. Count 1 declared upon defendant's breach of a contract to buy of plaintiff, at stipulated prices, 7 bales of 40-inch 7½-ounce burlap, to be delivered monthly, June to December, 1918, inclusive f. o. b. Memphis, Tenn., the breach averred consisting in defendant's refusal or failure to receive and pay for two bales of the burlap; and count 2 declared upon the like contract, averring defendant's failure to pay for two bales of the burlap, describing it, however, as 7-ounce quality rather than 7½-ounce quality of burlap.

[1, 2] Count 1 contained this averment:

" * * * That notwithstanding it (i. e., plaintiff) has carried out the terms of the con-

tract upon its part *in this*: That they (i. e., plaintiff) have delivered five bales of said burlap, and offered to deliver the other two bales thereof," the defendant failed and refused to receive and pay for the two bales undelivered. (Italics supplied.)

The italicized words, *in this*, referred to the antecedent allegation with respect to plaintiff's performance of the terms of the contract; but these words restricted the averment of plaintiff's performance to the specifications thereinafter set forth, viz. that plaintiff delivered five bales of the burlap and offered to deliver the other two bales. So interpreted, the count (1) does not aver plaintiff's entire performance of the terms of the contract. Not having alleged complete performance on plaintiff's part, no variance or failure of proof, entitling defendant to the general affirmative charge requested and refused, resulted from the evidence showing, without dispute, plaintiff's breaches of the contract through the nondelivery of a bale of burlap in July, 1918, and through the overcharge of defendant by plaintiff, for the bale delivered in September, 1918. There is no assignment of error questioning the action of the court in overruling demurrer to count 1, and there is in the demurrer no ground specifically criticizing the count (1) in respect of its averment of performance of the contract by the plaintiff. The sufficiency of the count (1) on demurrer is hence not before the court for consideration. The construction of the count is only made necessary by the request for the general charge. A separate request for general affirmative instruction concluding against plaintiff's right to recover under count 2 was not presented on the trial.

The evidence leaves in no fair state of contest these facts: That in May, 1918, defendant engaged with plaintiff to buy, to receive and to pay for, at stipulated prices, seven bales of 40-inch 7½-ounce burlap, the plaintiff obligating itself to ship a bale a month, beginning in June, 1918, until seven bales had been shipped in consecutive months; that one of these bales was shipped, received, and paid for in June, 1918; that plaintiff did not ship the July bale; that four other bales of this quality of burlap were seasonably shipped by plaintiff in August to November, inclusive, and these were received and paid for by defendant; that plaintiff charged defendant and the defendant paid for the September bale a price in excess of the agreed price for that bale; and that on November 25, 1918, subsequent to both of these breaches by plaintiff, the defendant wrote the plaintiff as follows:

"We are writing to ask that you kindly hold the two bales of 40″ 7½ oz. burlap which will complete our present contract, until we advise you further. If you can see your way clear to indulge us in this instance, same will be very much appreciated."

The plaintiff, three days later, replying:

"We are of course willing to extend the time on your contract for 7½ oz. burlaps and will be glad to hold the goods until you have instructed us to ship them."

Correctly interpreting the contract, the court, upon defendant's request, instructed the jury, in substance, that under the contract the plaintiff's duty was to make monthly shipments for June, July, and August without special order from defendant as to what day of the month on which the shipment should be made, and that a failure so to ship forbade recovery by plaintiff unless the jury concluded from the evidence that defendant waived noncompliance with respect to the shipment of the July bale.

[3] Unless, as defendant contended, there was a "substitution" of a different quality of burlap for the July bale that, under the contract, plaintiff should have shipped, but did not during July, 1918—a contention plaintiff contested in point of fact—the letter of November 25, 1918 (quoted ante), aside from other considerations pertinent to a like inquiry, manifested and effected an election (a form of waiver. 2 Williston on Contracts, § 683) to treat the contract as still efficacious and binding notwithstanding its breach by plaintiff through plaintiff's failure to make seasonable shipment of the bale due to be shipped to defendant in July. Apart from the contested issue of "substitution" of another quality of burlap for the contract's prescription of a bale to be shipped in July, it is evident that upon consummation of the breach of the contract defendant had an election to treat the contract as terminated or to regard it as of continuing force notwithstanding its breach. Pretermitting consideration of the possible effect of defendant's action in thereafter receiving the August-November shipments to place the plaintiff, relying and acting upon such action as a recognition by defendant of the contract's continuing operation (2 Williston, §§ 684–686) in a changed posture, it is clear that the terms and request of defendant's letter of November 25, 1918, promptly acceded to by plaintiff, manifested defendant's recognition of the contract's continuing efficacy, notwithstanding plaintiff's stated breaches of its obligations, if knowledge of the facts, the consummation of the breaches, was imputable to defendant in the premises. In circumstances not now necessary to be more than indicated (as has been done through the last citation of Williston's illuminating text), knowledge of the facts is essential to constitute the elements of an election, a choice between alternatives, which, upon occasion, operates to waive an antecedent breach of contract and to restore the rights and obligations of the parties. Williston, supra. This precedent information of the breach of a contract necessary to afford an essential basis for an "election" to treat

the breached contract as efficacious may be actual knowledge or a knowledge imputed to the party to the contract whose "election" is asserted.

"The principle of election is an equitable one, and unless the other party has been deceived or the situation changed it is inequitable to regard a choice as final unless the party having the right of election was aware, or *should have been aware*, of all material facts making one choice desirable or the reverse. It is often stated in terms that knowledge of facts is necessary; but blameworthy ignorance is sufficient, and it is better to say so plainly than to indulge in a fictitious presumption of knowledge." (Italics supplied.) 2 Williston, § 685, and notes; 13 C. J. p. 672; 5 Page on Contracts, § 2657.

In the cited section from Page it is said:

"At the same time, in many jurisdictions at least, this general statement is not to be taken literally. If one of the parties is charged with knowledge of certain rights, or if he could have learned of such rights by the use of ordinary diligence, he is to be treated in law as if he possessed such knowledge, except possibly as against persons who know that he does not in fact possess such knowledge; and accordingly, except as against such persons, conduct on his part which would amount to waiver if he possessed such knowledge, operates as a waiver, although he does not possess such knowledge."

[4-7] Where as here the breach—in avoidance of the invalidating effect of which election (waiver) by the other party is asserted—is with respect to a contractual obligation that, to be met, must have been performed by the party breaching the contract through an act of which the party relying on the breach could not have been unaware, knowledge of the breach is to be conclusively imputed to such party, and a subsequent recognition by that party of the binding quality of the contract, so previously breached, operates an "election" to treat the contract as continuing in force, constituting a waiver of the breach, and restoring the obligation of the parties to the status that would have existed if the particular breach had not occurred. An election, once made, is final. Lowy v. Rosengrant, 196 Ala. 337, 342, 71 South. 439. Under the doctrine stated, knowledge of the breaches consisting of plaintiff's failure to ship the bale of burlap it should have shipped in July, and the overcharge (above contract price) for the September bale of burlap, must be imputed to the defendant, to whom the July shipment must have been directly consigned and who paid the overcharge at which the September bale was billed to defendant. Its denial of knowledge of the breaches cannot avail it. To it must be imputed knowledge of the terms of its contract and of the plaintiff's failure to observe its contractual obligation to ship to defendant the July bale and to deliver (f. o. b. Memphis) the September bale at the contract price, defendant paying without objection the excessive charge. With such knowledge the defendant not only subsequently received other consignments, but wrote the quoted letter, dated November 25, 1918. Upon this phase of the case, the waiver of these breaches was effectual and final. With a degree of inconsistency, which we pass over, the defendant insisted that through an order forwarded in June, 1918, another quality of burlap was, by the agreement, substituted for the character of bale the plaintiff engaged to ship in July, 1918. The court submitted this contested issue to the jury's decision, the letter of June 18, 1918, from defendant to plaintiff, affording evidence for the jury to consider on that issue, notwithstanding plaintiff's denial of its receipt or knowledge of its existence. Holmes v. Bloch, 196 Ala. 322, 326, 327, 71 South. 670. If the substitution asserted by defendant was effected, there was, of course, no breach in respect of the July shipment, and likewise the defendant was justified in refusing to receive, under the original contract, bales of burlap that would have exceeded the number (7) specified in the original contract. Consequent upon application of the legal principles stated, the plaintiff was entitled to recover unless there was an effected substitution of the 12-ounce bales of burlap shipped and received by the defendant as for the July and August 7½-ounce bales that the original contract prescribed should be shipped by the plaintiff and received by the defendant during the months of July and August, 1918. As stated, the court submitted the issue of such asserted substitution to the jury, which, undoubtedly, resolved it in plaintiff's favor.

In this state of the case, the only remaining inquiries relate to the measure of damages to which plaintiff was due recovery if, as observed, the jury resolved the issue of substitution vel non against the defendant.

The appellant (defendant) excepted to these particular expressions in the oral charge:

"If the plaintiff is entitled to recover, plaintiff would be entitled to recover the difference between the contract price of the burlap, and its value at the time the defendant refused to receive it, if they refused to receive it, or what they received for it, if they disposed of it within a reasonable time after the refusal of the defendant to receive it and carry out their contract, if they did refuse to carry it out."

The court refused defendant these requests for instructions touching the measure of damages:

"(12) The measure of damages, if plaintiff is entitled to recover, is the difference between the contract price of each particular bale, agreed to be delivered, and the market price thereof at the time said particular bale ought to have been placed by the plaintiff on the car, f. o. b. Memphis."

"(13) If the plaintiff is entitled to recover, it is entitled to recover only nominal damages, under the evidence and law in this case."

"(14) Under the law the plaintiff could not recover, if entitled to recover at all, the difference between the contract price and the price at which said bales were sold at Memphis, Tenn., or the price at which they could have been sold at any of the dates referred to in the evidence as the date on which plaintiff preferred to deliver."

[8, 9] The defendant's letter of November 25th, to plaintiff (quoted ante), and plaintiff's letter in reply, also quoted ante, sought and secured the assent of the plaintiff to postpone the time of shipment of the unshipped two bales of 7½-ounce burlap "until we (i. e., defendant) advise you (plaintiff) further." Notwithstanding, plaintiff repeatedly asked the defendant to give the shipping directions consistent with the intent of the defendant's letter of November 25th, the defendant failed to observe its obligation in the premises. The plaintiff resold two bales of the 40-inch 7½-ounce burlap. The evidence shows without dispute that the market price of such burlap, at Memphis, May 1, 1919, was $8.70 an hundred yards; and the burlap was sold at that price on May 1, 1919. The jury's verdict seems to have been predicated of that market value. It appears that there was a steady decline in the market value of this character of burlap from the fall of 1918 through the spring of 1919. As a general rule, the measure of damages a seller may recover, where the buyer has refused to receive goods for the purchase of which he has contracted, "is the difference between the contract price and the market value at the time and place of delivery." 2 Mechem on Sales, § 1690. The application of this general rule is inhibited in this instance by the effect of the terms of defendant's letter of November 25th, quoted ante, and plaintiff's agreement to its proposal, postponing for a reasonable period the time of shipment of the unshipped bales of burlap of the quality described in the contract.

"Where the contract fixes the time for delivery, that time will usually control. If the time for delivery has been postponed at the request of the buyer, then the market value at the postponed time furnishes the basis. If no time were fixed, then, as has been seen (Mechem, § 1129), a reasonable time will be presumed, and the buyer's refusal to take the goods when tendered within a reasonable time will charge him with liability." Mechem on Sales, § 1691.

[10] Where the evidence is undisputed, the inquiry, what is a reasonable time, presents a question of law for the court. Continental Jewelry Co. v. Pugh, 168 Ala. 295, 302, 303, 53 South. 324, Ann. Cas. 1912A, 657; L. & N. R. Co. v. Hestle, 200 Ala. 137, 139, 75 South. 885. According to the undisputed evidence, the plaintiff sought, within a reasonable time from November 25, 1918, to move the defendant to direct the time for the shipment of the thus postponed delivery of the unshipped two

bales, and, also, within a reasonable time after it was manifest that defendant would not receive the undelivered bales, the plaintiff disposed of these bales at the market value thereof on May 1, 1919. The court did not, therefore, err in refusing defendant's special requests for instructions numbered 12, 13, and 14. While somewhat involved, the excepted-to feature of the court's oral charge was not inconsistent with the applicable rules for the admeasurement of the damages plaintiff, in any event, was entitled to recover.

The judgment is not affected with error. It is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.