## NORWICH UNION INDEMNITY CO. v. WILSON et al. (No. 10335.)

Court of Civil Appeals of Texas. Dallas. March 27, 1929.

Rehearing Denied May 4, 1929.

Wilson & Biggers and Roy W. McDonald, all of Dallas, for appellant.

White & Yarborough, W. H. Flippen, and John T. Gano, all of Dallas, for appellees.

VAUGHAN, J. For convenience, the parties to this appeal will be designated as follows: Norwich Union Indemnity Company, the defendant, as appellant; R. L. Wilson, the plaintiff, as appellee; and Globe Indemnity Company as intervener.

Appellee filed his suit December 29, 1925, to set aside a ruling of the Industrial Accident Board of Texas, denying his claim for compensation, under the Texas Workmen's Compensation Law, for injuries sustained at Florence, Ala., on October 24, 1924, while in the employ of the Uvalde Paving Company, a Texas corporation, with its home office in Dallas, Tex. Appellee alleged: That

he suffered total and permanent incapacity from such injuries; that appellant was the insurer of his employer under the Texas Workmen's Compensation Law; that he was employed in Texas by the Uvalde Paving Company and sent by said company to Alabama temporarily; that prior to and at the date of his employment appellee was a citizen of Texas; that at the date of his injuries appellee was making $42 per week; that he gave notice of injury and filed his claim for compensation within the statutory period; that from the board's final ruling he perfected his appeal within the proper time. Appellee, as excuses for failing to file notice of his injury and claim for compensation within the statutory period of 30 days and 6 months, respectively, alleged: (a) That he had no common-law suit against his employer; (b) that intervener, after his injury, began to pay appellee weekly compensation, which he believed was being paid under the laws of Texas; (c) that he was physically incapacitated to file claim for 9 months; (d) that appellant had not been prejudiced by his delay; (e) that irreparable injury would result to appellee if his claim were not heard, in that the Texas Compensation Law prevents suit against his employer, that the premium had been paid to appellant and that such premium was deducted from appellee's wage, and that he would lose it; (f) that his delay was through a mistake of fact and that appellee had been diligent; that the two insurance companies, namely, appellant and intervener, acted together to mislead by improper payments, in order that appellant might be discharged from liability. Appellee asked for a lump sum payment as compensation, in the sum of $8,000. Appellant answered appellee's suit with certain pleas in abatement, general demurrer, special exceptions, general and special denials, and a plea by way of estoppel, all of which will be reflected in the discussion of the propositions based upon the rulings by the trial court upon said pleas.

On the 25th day of March, 1927, the Globe Indemnity Company, under leave of the court, filed its plea of intervention, and as grounds for recovery and its right to so intervene alleged: That the intervener was the insurer of the Uvalde Paving Company in the state of Alabama; that said paving company was the employer of appellee; that in the course of said employment, appellee was injured in the state of Alabama and a claim was filed in said state on behalf of appellee and allowed against intervener; that, based upon such claim and award, said intervener paid out to appellee in good faith $928, and further pleaded that, if appellee's claim, as a matter of fact and of law, is against the Norwich Union Indemnity Company, then such intervener is entitled and should be allowed to recover out of any sum allowed appellee, who is alleged to be insolvent, the sum of $928.

To this plea of intervention, appellee directed a plea in abatement which was by the trial court overruled. Against this action no assignment of error was presented by appellee, or other complainant, but, to the contrary, he has specifically stated in his brief filed herein that he has not assigned any error thereto and does not wish for the judgment to be reversed on that ground. Appellant answered said plea of intervention by general demurrer and general denial. Said general demurrer was not presented to the trial court for action thereon. The trial court overuled appellant's plea in abatement, general demurrer, and special exceptions addressed to appellee's first amended original petition and submitted the case upon its facts to a jury by special issues.

Under leave of the court, appellant, on November 18, 1927, filed its first supplemental answer, and, as stated therein, "supplementing its first amended original answer," which supplement included 21 special exceptions addressed to paragraph 11 of appellee's first amended original petition, to which appellant had replied by its said amended answer filed November 17, 1927. Without objection, the trial court heard and passed upon said special exceptions. Therefore, notwithstanding said exceptions were not presented by a plea in conformity with rules Nos. 8 and 10, nor observed rule No. 12 for the district and county courts of Texas (see Harris' Rules of the Courts, 1921 Edition), we feel called upon to review the disposition made of same by the trial court.

Practically all of said exceptions are embraced within 11 propositions, numbered in appellant's brief, respectively, 3 to 13, inclusive. In discussing the ruling on said exceptions, we shall treat each proposition as embracing only one exception and consider said propositions as the exceptions passed upon and presented for review.

As thus grouped and classified as per scope and effect, the court overruled each one of appellant's exceptions, same being as follows:

"Third: That appellee, in attempting to allege justification for delay of one year in filing notice of injuries and claim for compensation with the Industrial Accident Board, only alleged conclusions and beliefs. This was in effect but a general demurrer and as said petition was not subject thereto, said special exception was properly overruled. Rules Nos. 17 and 18 for the District and County Courts; Harris' Rules of the Courts (1921 Edition);

"Fourth: That the allegations in general terms, that 'this is a meritorious case,' and 'plaintiff has a meritorious case,' are mere conclusions of the pleader;

"Fifth: That the allegations, that appellee

was not and is not permitted to sue his employer under the common law; that the Texas Compensation Law robs appellee of any suit against his employer, the Uvalde Paving Company; that if he is denied compensation, both insurance companies go scot free, in that appellee has no claim under the Alabama law whatsoever, but has one under the Texas law, and if denied the right to prosecute his claim under the Texas law, both companies are acquitted of liability, notwithstanding that said insurance has been paid for; that under the Alabama law appellee could only recover the sum of $12.00 per week,—therefore, appellant would make a savings of $8.00 per week of appellee's compensation; that said exception should have been sustained because appellee thereby attempted to allege in general terms matters of law which are conclusions and immaterial to any issue of appellee's claim against appellant;

"Sixth: To the allegations 'that plaintiff did not know he was being paid according to the Alabama law, and did not know his employer had a different insurer in the State of Alabama from the one in Texas, because the knowledge of such fact is as a matter of law and imposed upon him';

"Seventh: To the allegation 'that plaintiff was diligent, and that his failure to file claim within the six months allowed by law was not due to any negligence, because same were conclusions';

"Eighth: To the allegations 'that plaintiff was informed and believed that he was being paid compensation under the Texas law, because same were conclusions of the pleader, and were fundamentally defective, in that, they wholly failed to show that plaintiff was responsible for such information';

"Ninth: 'That plaintiff's failure to file claim for compensation was solely due to mistake of fact because it was a conclusion and could not excuse appellee's delay in filing claim for compensation';

"Tenth: To the allegation, 'that defendant has not been injured or prejudiced by the failure to file claim for compensation within six months, because same was filed within the period of the statute of limitation, on the ground that such allegation was a conclusion and wholly prejudicial';

"Eleventh: To the allegation 'that when plaintiff accepted weekly compensation from the Globe Indemnity Company, he was too weak, too sick, disabled and incapacitated to investigate or to make any claim whatsoever, and that he made no claim in the State of Alabama and only accepted said payments because they were voluntarily tendered him upon the representation that he was entitled to same, because such allegations were immaterial to plaintiff's claim and mere conclusions';

"Twelfth: To the allegation that 'plaintiff filed his claim for compensation within six months after he became able to do so, on the ground that same is a conclusion';

"Thirteenth: To the allegations, 'that the defendant and intervener had acted together to deprive plaintiff of his compensation; that the intervener in paying him compensation acted on behalf of defendant to mislead plaintiff; that the failure of plaintiff to file his claim was the result of a mistake, accident and fraud on the part of defendant, because said allegations were conclusions and no facts were alleged in support of same.'"

The merit of a special exception should be determined by considering the pleas, or a part thereof, excepted to in connection with the entire fabric thereof, in so far as the portion excepted to may be germane to the entire plea, or section thereof, as neither the inefficiency nor inappropriateness of any plea can be justly and fully determined by the effect of an isolated portion thereof. So, tested by and within its own terms, section 11 of appellee's first amended original petition was subject to exceptions Nos. 5, 7, 8, 9, 10, 12, and 13, but was not subject to exceptions Nos. 3, 4, 6, and 11.

By appellant's second proposition, namely, "It is error for the court to allow an insurance company, which has paid compensation to the insured workman under the laws of another state, to intervene in the suit of the workman under the laws of Texas and recover its payments from the amount of compensation allowed to him," the right of the Globe Indemnity Company to intervene in this suit is presented.

But for the fact that this cause will be reversed and remanded for further proceedings, we would not review the order permitting the Globe Indemnity Company to intervene, the record not disclosing the proceedings had in reference to the filing of said plea so as to authorize this court to pass upon the validity of the proceedings had in reference thereto. However, in view of another trial, we feel called upon to take notice of such proceedings as revealed by the record so as to avoid the probability of error being committed in reference to the right of the Globe Indemnity Company to intervene. Appellee sued to recover damages for personal injuries sustained by him as an employee of Uvalde Paving Company in the course of his employment under the Workmen's Compensation Law. Intervener's right to intervene is based upon the assertion of an indebtedness against appellee on account of certain payments made by intervener as above stated. Intervener's cause of action is absolutely foreign to and has no connection with the cause of action asserted by appellee against appellant, and no right asserted by intervener could be properly litigated in the suit as instituted by appellee against appellant, even if the following provision of

the Workmen's Compensation Law did not exist, namely, article 8306, § 3, R. S. 1925: "All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits, or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void."

Appellee sued for compensation "under the succeeding sections" of the Workmen's Compensation Law; title 130, Workmen's Compensation Law, part 1, R. S. 1925. If it be conceded that a meritorious cause of action existed in favor of intervener under the doctrine of subrogation, and that it held an assignment duly executed by appellee for a part of the compensation sued for, to cover the indebtedness claimed, nevertheless, intervener could not enforce the assignment in this or any other suit, as the assignment would be absolutely void. However, we cannot take affirmative action on the error committed in permitting said intervention and reverse this cause on account thereof.

Appellant, by its first proposition namely, "That plaintiff having received $928.00, compensation under the laws of Alabama, and having made no refund or tender thereof to the Alabama insurer, had elected to proceed under the Workmen's Compensation Act of Alabama and could not, upon cessation of such payments, obtain a double recovery by proceeding under the Texas Act," presents for our review the question of election and double recovery.

Was there an election of remedies, that is, did appellee elect to collect his compensation under the policy issued by intervener? Appellee, for a number of years prior to and at the time he went to Alabama as an employee of Uvalde Paving Company, had been and was a citizen of Texas, and had been and was for a number of years, and was on the date he left Texas for Alabama, an employee of said paving company in Texas, was employed by said paving company in Texas to go to Alabama temporarily to work for it in the same character of service he was performing in Texas when he was injured October 24, 1924, at Florence, Ala. The Uvalde Paving Company had obtained, and there was in force long prior to and at the time appellee went to Alabama to work, a policy of workmen's compensation insurance issued by the appellant covering the Texas employees of the Uvalde Paving Company, under which appellee was protected prior to and at the time he went to Alabama. Said paving company, prior to and at the time appellee went to Alabama, had a policy of workmen's compensation insurance issued by intervener, covering Alabama employees of said paving company. Appellee had been working about 5 weeks when he was injured. It was agreed by all parties to the suit "that a claim was presented for and on behalf of the plaintiff against Globe Indemnity Company in Alabama and compensation was paid to him by Globe Indemnity Company for a period of 44 weeks at $12.00 per week, and that said intervenor paid out the sum of $394.00 for medical bills and expenses and costs covering treatment of plaintiff under the claim." Bearing upon the above agreement, appellee testified as follows: "I did not file a claim for compensation in the state of Alabama * * *. as to whether I made a claim in Alabama * * * to anybody in Alabama, I will say, I never had no thought of a claim. * * * I did not have an attorney to represent me in Alabama in my claim. With reference to whether I let the Uvalde Paving Company represent me, I will say, I don't know who presented it. * * * I never appeared before the Industrial Accident Board in Alabama. I was not in any condition to appear anywhere in Alabama."

Each of the policies of insurance issued by appellant and intervener contain, respectively, the following provisions necessary to be reviewed in disposing of the propositions under discussion:

"Par. 1 (b): To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employés as are legally employed, wherever such injury may be sustained within the territorial limits of the United States of America."

"Par. 2 (a): To pay promptly to any person entitled thereto, under the Workmen's Compensation Law, and in the manner therein provided, the entire amount of any sum due and all installments thereof as they become due."

(3) "To such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such certain statutes as may be applicable thereto, cited and described in an endorsement attached to this policy, each of which statutes is herein referred to as the Workmen's Compensation Law."

(4) "* * * The jurisdiction of this employer for purposes of any Workmen's Compensation Law covered hereby shall be jurisdiction of the company and the company shall be in all things bound by and subject to findings, judgments, awards, decrees, orders or decisions rendered against this employer in the form and manner provided by such law and within the terms, limitations and provisions of this policy not inconsistent wth such laws."

In addition to the above provisions, intervener's policy contains the following:

(5) "The obligations of paragraph 1 (a) of the policy to which this endorsement is at-

tached includes such Workmen's Compensation Laws as are herein cited and described: Act 245, Laws of 1919, State of Alabama, and all laws amendatory thereto, which may be or become effective while this policy is in force."

In addition to said provisions Nos. 1, 2, 3, and 4, appellant's policy contains the following:

(6) "The obligations of paragraph 1 (a) of the policy to which this endorsement is attached, and the obligations of the company are included in such Workmen's Compensation Laws, as are herein cited and described, and none others, namely: Chapter 179, Laws 1913, as amended by Chapter 103, Laws 1917, and Chapter 115, Laws 1921, and Chapter 177, Laws 1923, State of Texas, and all laws amendatory thereof, which may be or become effective while this policy is in force."

(7) "The Home State of the employer is understood to be the state in which his operations are personally conducted, as herein described. The policy, within its terms and provisions, covers the obligations of this employer, (a) for compensation under the Workmen's Compensation Law of the 'Home State' for injuries wherever sustained, if such law is extra-territorial, or otherwise applicable."

If the policy issued by the intervener to Uvalde Paving Company had been the only policy of that character in force at the time appellee was injured, then appellee would have been included within and protected by the provisions of that policy as an employee of the Uvalde Paving Company in Alabama. What effect did the policy issued by appellant have on the rights of appellee to assert a legal claim under the policy issued by intervener on account of the injury sustained by him in Alabama?

Article 8306, § 19, R. S. 1925, provides: "If an employé who has been hired in this State sustained injury in the course of his employment he shall be entitled to compensation according to the law of this State, even though such injury was received outside of the State."

The above provision was materially changed by an Act of the Fortieth Legislature, p. 383, c. 259, § 1; said amendment being in part as follows: "If an employee who has been hired in this State, sustain injury in the course of his employment he shall be entitled to compensation according to the law of this State, even though such injury was received outside of the State, and such employee, though injured outside of the State of Texas, shall be entitled to the same rights and remedies as if injured within the State of Texas. * * * Provided that such injury shall have occurred within one year from the date such injured employee leaves the State, and provided further, that no recovery can be had by the injured employee hereunder in the event he has elected to pursue his remedy and recovers in the courts of the state where such injury occurred."

However, as said amendment was not in force at the time appellee was injured, the rights and liabilities of the parties under said policy cannot be measured or determined thereby. This, notwithstanding section 2 of said amendment, viz., "That this amendatory act shall be effective and be deemed and held to be in effect as of March 28th, 1917, that being the effective date of the Act of 1917, chapter 103," as appellee's right to compensation under the terms of the policy issued by appellant became immediately fixed under the terms of the then existing Texas Workmen's Compensation Law, and could not be enlarged or diminished by any law becoming effective thereafter. It is clear, from the terms and provisions of appellant's policy above quoted, that appellee, as a Texas employee of the Uvalde Paving Company, was protected thereunder on account of injuries received by him in Alabama. Appellee was a citizen of Texas and, for several years prior and up to the date he left Texas for Alabama, had been and was in the employment of Uvalde Paving Company, was employed by said company in Texas to go to Alabama as a laborer in the same character of service he had performed for said company in Texas. Appellant's policy covered all of said paving company's employees in Texas and while they were under such employment out of Texas. The terms and provisions of the policy followed appellee to Alabama just the same as it existed while he was in Texas. He was as certainly covered by appellant's policy as if his name had been written therein, and in no respect were his rights thereunder, as such employee, impaired, altered, or changed by his temporary employment by his Texas employer to serve it in the same character of labor in Alabama.

We cannot gather from the record before us anything tending to show that it was the purpose of Uvalde Paving Company to have in force workmen's compensation insurance for appellee as its employee, under both the policy issued by appellant under the laws of Texas and the policy issued by intervener under the laws of Alabama. This must be true, as the parties are presumed to know the law that secured the benefits of appellant's policy to appellee while he was serving Uvalde Paving Company temporarily in Alabama. Article 8306, § 19, supra.

Therefore, we hold that, because of appellant's policy of insurance, appellee was not protected under the Workmen's Compensation Law of Alabama (Gen. Acts Ala. 1919, p. 206) under the policy of insurance issued by intervener, but that his rights to compensation on account of his injury were secured to him by appellant's policy under the laws of Texas. We further hold that the payment of the several sums made by intervener to appellee,

aggregating $928, under the mistaken belief by intervener that it was liable to appellee under the terms of its policy, and the receipt of said sum of $928 by appellee, did not amount to a double recovery. Furthermore, we are of opinion that if appellee had in fact demanded of intervener the payment of compensation under the terms of its policy, and that in pursuance thereof said payments were made, same would not amount to a double recovery under the facts before us.

As to an election, it is sufficient to say it does not appear that appellee actually had two valid, available, and inconsistent remedies. To constitute an election, there must exist two coexistent but inconsistent remedies, each equally available on the same state of facts, and the making selection of one of the remedies with the knowledge of the facts, either actual or implied. McAnelly Hdwe. Co. v. Bemis Bros. Bag Co., 208 Ala. 394, 94 So. 567–569; Tyler County State Bank v. Shivers (Tex. Civ. App.) 281 S. W. 264–267; Mosher Mfg. Co. v. Eastland, W. F. & G. R. Co. (Tex. Civ. App.) 259 S. W. 253; Bynum v. Moore, 101 Okl. 128, 223 P. 687; Johnson v. First Nat. Bank (Tex. Civ. App.) 198 S. W. 990; Bogert v. So. Pac. Co. (C. C. A. N. Y.) 244 F. 61–64; Fitzgerrell v. Federal Trust Co. (Mo. App.) 187 S. W. 600; Utica City Nat. Bank v. Penwarden, 103 Misc. Rep. 103, 170 N. Y. S. 619.

We therefore hold that appellee did not elect to collect compensation under the policy issued by intervener through receiving the payments made to him as alleged by intervener.

Appellant's motion for an instructed verdict, on the ground there was no evidence sufficient to sustain a finding of the average weekly wage of appellee, was overruled. Said ruling is presented as error by proposition No. 28. The contention being that the statute provides that the average weekly wage shall depend primarily and directly upon the average daily wage; that the evidence introduced on this issue dealt solely with the weekly wage without showing how many days a week appellee worked. The only evidence on this issue was the testimony of appellee, viz., on direct examination: "At the time of my injury I was drawing $42.00 per week from the Uvalde Paving Company. * * * I had been getting that wage for a year, that amount prior to that time. * * *" On cross-examination: "I was getting $42.00 a week when I went to Alabama from the Uvalde Paving Company. I got $36.00 here in Dallas. I do not remember how longer I had been working at that, but about a year."

By deposition, appellee testified that before he went to Alabama his wage was raised to $35 per week and to $45 after he went to Alabama; that for the week preceding his going to Alabama he received $35, and for the week prior thereto $30. The conflict in the testimony of appellee, as given on the witness stand, and his testimony by deposition presented an issue of fact for the jury to determine, this notwithstanding the conflict existed solely within the testimony of appellee, and it was not within the province of the court to deprive the appellee of a jury trial upon this issue, by reason of the fact that his testimony was inconsistent and in conflict, as above pointed out; it being for the jury to determine whether or not appellee had failed to prove the essential elements for calculation of compensation.

We therefore hold that there was no error in refusing appellant's motion for an instructed verdict.

We are of the opinion that the computation of appellee's average weekly wage, under the above facts, is ruled by article 8309, § 5, R. S. 1925, namely, "the average weekly wages of an employé shall be 1-52 part of the average annual wages," as construed by the following cases: Howard et al. v. Texas Emp. Insurance Ass'n (Tex. Com. App.) 292 S. W. 529; Williams v. Petroleum Co. (Tex. Civ. App.) 4 S.W.(2d) 631. We therefore hold that appellee's average wage was properly computed by taking his actual earnings for the 12 months immediately preceding the date of his injury, dividing that amount by 52; $\frac{1}{52}$ portion of said actual annual wage constituting his average weekly wage, and 60 per cent. of the weekly wage thus determined constituting weekly compensation for award. The court did not err in refusing to instruct the jury to return a verdict for appellant for the want of sufficient evidence on which to base findings of appellee's average weekly wage.

By proposition No. 30, appellant contends that the court erred in submitting the question of total incapacity to the jury, in that the evidence disclosed that about 10 months after his injury appellee went to work and had been at work ever since, and otherwise showed that he had ability to labor and earn money.

As to the injury sustained by appellee, and his ability to labor and earn money, we gather from the statement of facts the following: On the morning of October 4, 1924, appellee's clothing in some way was caught in a set screw in the counter shaft of a concrete mixer while the shaft was in rapid motion, and he was carried around with the revolving shaft, his leg being thrown up against the top of the shaft, and it was crushed and broken above and below the knee. This cause was tried in the court below on November 21, 1927.

Appellee was a laborer, his only occupation being that of a workman. There was no attempt to show that he was qualified by education to hold an office job, or to perform any other character of service than the service he was engaged in when he was injured. Appellee was under the care of a doctor for over a year, during about 7½ months of that time was mostly confined to his room, and for

about 4½ months confined to his bed. As to his present condition, appellee testified: "At the present time * * * it has now been three years since I was injured. I experience pain in that leg; when I walk it has a tendency to swell. Last year, it improved, it seemed for a time, and I got to where I could get around, and during the last year it has not done any good; in fact, it went bad. I have lost weight in the last year. At the time I was injured I weighed 160 pounds and now I weigh 138 pounds. When I walk around my injured leg gets sore and my knee swells and gives me pain in my side and it has got to where it goes in my back and my pelvis bone and up in the spinal column."

He further testified that his injured leg was about 1½ to 2 inches shorter than the other, and that it was crooked and his knee was stiff, and that he could only bend his knee a short distance; that there was a steel plate on the bone; *that on account* of the shortness of the injured leg he walks to one side.

As to being able to labor and earn money, he testified: "I do light employment at the present time. I am working for the Uvalde Paving Company, the only people in town that I suppose would work me. When I do work and while at work my leg gets tired and gives out and I have to sit down. I work because I have to work to live—I have nothing to live on. I have trouble with this leg and suffer pain as far as that goes all of the time. When I work in the day time and go home at night I have treatment for that leg. We rub the leg constantly with alcohol and put hot water bottles on it daily. I apply alcohol to the leg where the brace was and under the knee and above the brace. I really think that I have went down a little in the last year; in fact, I have lost eight or ten pounds weight in the last year. I have had more pain in the leg in the last six months."

From this, we are of the opinion that the court did not err in submitting the issue of "total incapacity" to the jury, this notwithstanding appellee had been at the date of the trial in the service of Uvalde Paving company for about 11 months and was receiving a weekly wage of $36. Travelers' Ins. Co. v. Richmond (Tex. Com. App.) 291 S. W. 1085; Hartford Acc. & Ind. Ins. Co. v. Miller (Tex. Civ. App.) 5 S.W.(2d) 181; Great Southern Life Ins. Co. v. Johnson (Tex. Civ. App.) 294 S. W. 675; M., K. & T. Ry. Co. v. Rogers (Tex. Civ. App.) 201 S. W. 417.

Under propositions Nos. 31, 32, and 33, appellant complains of the submission of special issue No. 4, namely: "Would a failure of the defendant, Norwich Union Indemnity Company, to pay compensation, if any, to plaintiff, R. L. Wilson, on account of his injuries, if any, in a lump sum settlement cause a 'manifest hardship and injustice' to the plaintiff, R. L. Wilson? Answer 'yes' or 'no.' In order to assist you in your answer to special issue No. 4, you are instructed that the law provides that in special cases where a manifest hardship or injustice would otherwise result, the court may decree that the defendant insurance company may redeem its liability by paying in a lump sum, and it would be your duty in answering special issue No. 4, hereinbefore referred to, to take into consideration all of the facts and circumstances before you upon this question, as to whether or not it is best to require lump sum settlement in the discharge of defendant's liability, or weekly payments"—because (1) the evidence was insufficient to authorize an award of a lump sum, and (2) because the jury was not limited to the pleadings in the case.

Section 15, article 8306, R. S. 1925, in part provides: "In special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board *may compel the association in the cases* provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

What would constitute "manifest hardship and injustice" within the meaning of the above provision can only be determined from all of the facts in any given cause. The evidence previously quoted clearly presented that question as an issue of fact to be determined by the jury. Was this phase of the case properly presented by special issue No. 4? Under the law providing for the payment of compensation in a lump sum, the issue to be determined by the jury was not, "whether or not it is best to require a lump sum settlement in discharge of the defendant's liability, or weekly payments," but the true issue was whether "manifest hardship and injustice" would result from the payment of the compensation in weekly installments.

By said charge, the jury was instructed that the answer to said special issue should be based upon all the facts and evidence before them, "as to whether or not it is best to require a lump sum settlement in the discharge of the defendant's liability or weekly payments." This relieved the jury from finding that a "manifest hardship and injustice" would result to appellee from a payment of the compensation in weekly installments. This was error; it not being within the terms of the law "whether it is best to require a lump sum settlement," but whether or not "manifest hardship and injustice would result through the payment of compensation in weekly sums." In other words, the facts must show that "manifest hardship and injustice" would result from payment in weekly installments before the payment in a lump sum can be authorized under the law.

This construction of said statutory provision is in harmony with the policy of the law, providing for lump sum settlement, as declared by the following portion of article 8306, § 18, R. S. 1925: "It is the purpose of this

law that the compensation herein provided for shall be paid from week to week and as it accrues and directly to the person entitled thereto, unless the liability is redeemed as in such cases provided elsewhere herein." Article 8305, §§ 15 to 18, supra; Ætna Life Ins. Co. v. Rodriguez (Tex. Civ. App.) 255 S. W. 446; Texas Employers' Ins. Ass'n v. Glass (Tex. Civ. App.) 2 S.W.(2d) 902.

This issue should have been limited to the case as made by the pleadings, and the evidence introduced in reference to the payment of the weekly compensation in a lump sum. However, this error is not material, as there was no evidence bearing upon this particular issue introduced on any fact that was not alleged in appellee's petition. In other words, the evidence introduced was confined to the allegations made in reference thereto; therefore, the jury could not have possibly considered any other than the grounds alleged for the making of a lump settlement.

By its propositions Nos. 34 and 35, appellant claims that special issue No. 5, "Did the injuries, if any, sustained by plaintiff naturally result in total permanent loss of use of his right leg," and issue No. 6, "What per cent. of permanent disability in the use of plaintiff's right leg, if any, was caused by the injuries, if any, sustained by plaintiff on October 24th, 1924? Answer giving percentage," should not have been given, on the ground that the evidence was insufficient to sustain an affirmative finding to No. 5 and insufficient to sustain any finding of the per cent. of loss of use of appellee's right leg.

Special issue No. 5 was answered, "No," and No. 6, "90 per cent." Appellee could only have 90 per cent. permanent disability to his leg and at the same time there exist a total permanent incapacity for appellee to labor and earn money as the result of the injury to his leg. In other words, the effect of the injury to the leg was not confined, as shown by the testimony, to his leg, but extended and involved other parts of his body. The injury to appellee's leg could, by extending to and involving other members of the body, be the contributing cause producing total permanent incapacity, and as to whether or not such condition existed, was sufficiently presented by the evidence to require the submission of said issues Nos. 5 and 6 to the jury. Lumbermen's Reciprocal Ass'n v. Anders et al. (Tex. Civ. App.) 292 S. W. 265. Appellee urges that, as submitted, special issues Nos. 5 and 6 were prejudicial to it because said issues assumed some permanent disability must have been suffered by appellee, and that the jury had to find either that the loss of use of appellee's leg was total and permanent, or that some definite per cent. of permanent disability existed; therefore, said issues were on the weight of the evidence. To this we cannot assent. As we think a careful reading of the issues will show that said contentions are without real merit, further discussion will not be presented.

Propositions Nos. 36, 37, 38, and 53 are based upon the submission of special issue No. 7, namely: "What was the average weekly wage of plaintiff, R. L. Wilson, at the time of and on the occasion of the accident and injuries, if any, sustained on October 24th, 1924? Answer in dollars and cents." Appellant objected thereto because (a) appellee had testified that he had worked about a year before the accident, but had wholly failed to testify to facts which would show his average daily wage during that time; and (b) because the evidence thereon was undisputed, and the issue was therefore a question of law for the court.

Proposition No. 53 attacks the answer of the jury to said special issue on the ground that the finding that appellee's average weekly wage was $35.65 was not calculated as required by law, and the court therefore erred in using the sum so found as the basis for the judgment rendered.

The above propositions were fully comprehended within and disposed of in the discussion of proposition No. 28, and fall necessarily within the reason for overruling said proposition No. 28, and are therefore overruled.

Propositions Nos. 29, 32, 40, 41, 43, and 44, predicated upon alleged errors in the following special issues, and definition given in reference thereto, namely:

"(1) That the definition of the term 'total incapacity,' given in connection with special issue No. 1, was incorrect and contrary to law."

"(9) How long did physical incapacity, if any, to file said claim for compensation, if any, continue from the date of plaintiff's injury, if any, sustained on October 24, 1924?"

"(12) You are instructed that the Employers' Liability Act of Texas provides, that a claim for compensation for an injury sustained in the course of the employees employment shall be made within six months after the occurrence of the injury, provided that for good cause the court may, in meritorious cases, waive strict compliance of said limitation as to filing of the claim. Now, bearing in mind the above instructions as herein given you, answer the following questions:

"(a) Is this a meritorious case?

"(b) Has good cause, if any, been shown why R. L. Wilson did not file claim for compensation within six months after October 24, 1924?"

—cannot be considered because the objections made to said special issues and definition, respectively, did not point out with any certainty the particular portion objected to, stating in what respect same was erroneous. The objections should have been made with this particularity in order to have conferred on the trial court an opportunity to consider the objections made, with an understanding of

the purpose, scope, and effect of same, so that, if error had been committed, same could have been eliminated through the correction of the charge excepted to in the light of the objections made. Articles 2185 and 2186, R. S. 1925; Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920; Farmers' & Mechanics' National Bank v. Marshall (Tex. Civ. App.) 4 S.W.(2d) 165.

By its proposition No. 54, appellant challenges the correctness of the judgment rendered in favor of appellee, based on the finding of the jury in answer to special issues Nos. 8 and 12, contending that the failure of the jury to answer special issues Nos. 9 and 11 rendered the findings of the jury in answer to special issues Nos. 8 and 12 insufficient to support the judgment. By special issue No. 8 the jury was required to answer whether or not appellee was physically incapacitated to file claim for compensation by the injuries sustained by him on October 24, 1924. This issue was answered, "Yes." Question (a) of special issue No. 12, "Is this a meritorious case," was answered, "Yes." Question (b) of said issue, "Has good cause, if any, been shown why R. L. Wilson did not file claim for compensation within six months after October 24, 1924," was answered, "Yes."

Following are the special issues that were not answered:

"No. 9: How long did physical incapacity, if any, to file said claim for compensation, if any, continue from the date of plaintiff's injury, if any, sustained on October 24, 1924?"

"No. 11: Did plaintiff, R. L. Wilson, file his claim for compensation before the Industrial Accident Board of Texas, within six months after his physical incapacity, if any, to file said claim, if any, ended?"

Special issues Nos. 8, 9, 11, and 12 were submitted under the provisions of article 8307, § 4a, R. S. 1925, viz.: "Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employé or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing the claim before the board."

Appellee, because of his physical incapacity, claimed the right to have strict compliance with the limitations as to notice and filing of claim, as provided for in said section 4a, waived. In order to maintain his cause of action, it was necessary for appellee to establish that he had, in one of the following respects, complied with the provisions of said section 4a, viz.: (a) That appellant (the association), or the Uvalde Paving Company (the subscriber), had notice of his injury, or that notice thereof had been given to the "association" or "subscriber" within 30 days after the happening thereof, and that a claim for compensation with respect to such injury had been made within 6 months after the occurrence of same; or (b) that on account of his injury he was physically incapacitated to file his claim for compensation and that within 6 months after the removal of such physical incapacity did give notice and make claim as required by said section 4a.

Under the above construction, what is the office of the provision, "For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice and the filing the claim before the board," becomes a material inquiry. After a careful analysis of said section 4a, we have reached the opinion that said provision can only become material in cases (a) where a workmen, without the existence of physical or mental incapacity, has failed to give notice within 30 days and make claim within 6 months from date of his injury, or (b) where physical or mental incapacity existed and the workman, within 6 months after the removal of such incapacity, failed to comply with the limitations as to notice and the making of claim.

Therefore, for "good cause * * * in meritorious cases," the Industrial Accident Board is authorized to waive strict compliance with the limitations as to giving notice and making claim before the board, either within 6 months after the date of injury or within 6 months after the removal of physical or mental incapacity. This for the reason it is apparent that no cause could exist to waive said limitations while the employee was unable, by reason of physical or mental incapacity, to comply therewith; the sole question under that condition being whether or not the claim was filed within 6 months after the incapacity ended—there being no limitation as to the duration of the period of physical or mental incapacity. Hence, we are of the opinion that an injured employee can claim under the provisions of said section 4a that, after the removal of his physical or mental incapacity, he was delayed by a good cause from complying with the limitations of said section 4a, within the 6 months immediately following the date such incapacity ceased to exist.

From the above views it is clear that said section 4a provides two alternatives, but in concurrent channels; no independent right being given by the provision of said section 4a under discussion, within its own terms, for waiving the strict compliance with the limitation as to giving notice and filing claim, on the grounds merely of the existence of good cause in a meritorious case. Evi-

dence showing the existence of physical incapacity to file claim creates two conditions, namely: (a) The case ceases to be of the class of cases depending upon the date of injury for the determination of the time in which a claim should be filed; (b) the date of injury becomes absolutely immaterial from the moment the jury finds that the workman was mentally or physically incapacitated to file his claim, and the claim must be determined by the provision requiring it to be filed within 6 months after the removal of such incapacity, the material dates then being the date on which such incapacity ceased and the date claim was filed.

The jury not only failed to answer special issues Nos. 9 and 11, but in a communication made to the court in connection with the verdict returned, stated: "We, the jury, are unable to agree on answers to special issue No. 11 and special issue No. 9."

Therefore, neither the date when appellee's physical incapacity was removed, nor whether his claim for compensation was filed before the Industrial Accident Board of Texas within 6 months after the removal of his physical incapacity, was found by the jury. Said issues Nos. 9 and 11 were material, and, because of the submission thereof to the jury, the court was not at liberty to ignore same and render judgment on the assumption that the evidence introduced thereon was sufficient to establish the facts submitted by said issues to the jury for determination, or to make any character of finding thereon. Texas Employers', etc., v. Shilling (Tex. Com. App.) 289 S. W. 996. We have carefully considered the answers to special issues Nos. 8 and 12, and find that same will not support the verdict without answers to special issues Nos. 9 and 11, favorable to appellee. In answer to special issue No. 8, the jury found that appellee was physically incapacitated to file claim by the injuries sustained on October 24, 1924, and in answer to question (b) of special issue No. 12, "that good cause had been shown why appellee did not file his claim for compensation within six months after October 24th, 1924." The finding in answer to special issue No. 8 rendered the finding to question (b) of No. 12 immaterial. Appellee had the full period of 6 months within which to file his claim after he was injured on October 24, 1924, and special issue No. 8 did not call for a finding of the date appellee's physical incapacity was removed. It is therefore clear that, by answer to special issues Nos. 8 and 12, the jury did not find that appellee filed his claim within 6 months after the termination of his physical incapacity, or that good cause existed for his failure to file his claim within 6 months after his physical incapacity was removed.

We therefore sustain appellant's proposition No. 54. All other propositions not specifically herein discussed have been carefully considered, and, finding no error therein, the same are overruled, except propositions Nos. 15 to 27, inclusive, and propositions Nos. 46 to 51, inclusive, neither of which could be considered for the want of proper bills of exceptions supporting said respective propositions.

Because of the errors above pointed out, the judgment of the court below is reversed, and cause remanded.

On Motion of Appellee Globe Indemnity Company to Retax Costs.

It is urged by said appellee that the order, taxing the costs of this appeal against appellees, R. L. Wilson and Globe Indemnity Company, jointly and severally, should be set aside and the entire costs taxed against appellee Wilson, on the ground that the reversal of the judgment of the trial court was not brought about by any action of appellee Globe Indemnity Company either in the trial court or in the appellate court; that therefore, as all of the costs that accrued on this appeal would have accrued if the appeal had been prosecuted solely against appellee Wilson, no part of such costs should be taxed against appellee Globe Indemnity Company. Said appellee voluntarily made itself a party to this suit, assuming a position antagonistic both to appellant and appellee Wilson, and recovered judgment in effect against both of said parties, to be paid, however, by appellee Wilson out of the amount for which appellant was held liable to Wilson; therefore, it was necessary, in order to perfect its appeal, that appellant make the Globe Indemnity Company a party thereto, and it thereby became liable for the payment of the costs of this appeal under article 1870, R. C. S. 1925, namely: "In any cause reversed by a Court of Civil Appeals, the appellant shall be entitled to an execution against the appellee for costs occasioned by such appeal, said costs to be taxed by the clerk of the said court."

Although said appellee, as intervener, asserted rights against both appellant and appellee Wilson, and litigated the issues presented by it in the district court and in this appeal sought to sustain the judgment rendered in its favor, nevertheless, by reason of the fact that the judgment of the court below was not reversed on account of proceedings had on said plea of intervention, but altogether on account of errors committed in passing upon the issues involved between appellant and appellee Wilson, we believe it would be inequitable to require said appellee to pay more than one-half of the costs of said appeal. Therefore, said motion is granted, to the extent that the order heretofore entered, taxing the costs of this appeal against appellees, jointly and severally, is hereby set aside, and said costs are hereby taxed as follows: "One-half thereof against appellee Wilson and one-half against appellee Globe Indemnity Company.